[Crim. No. 7243.   Second Dist., Div. Three.   Feb. 23, 1961.]

## THE PEOPLE, Respondent, v. EUGENE CHARLIE BELCHER et al., Appellants.

William Huel Barrow, in pro. per., for one Appellant.

Stanley Mosk, Attorney General, and Elizabeth Miller, Deputy Attorney General, for Respondent.

SHINN, P. J.—By information Eugene Charlie Belcher and William Huel Barrow were accused of a violation of sections 211 (robbery) and 245 (assault with a deadly weapon) of the Penal Code; the defendants were represented by the public defender and tried by a jury. They were convicted of second degree robbery and assault with a deadly weapon which was reduced to assault with intent to commit great bodily injury. Probation was denied and each defend-

ant was sentenced to the state prison. Both appeal from the judgments.

Appellant Barrow applied for appointment of counsel on the appeal. After reading the record and ascertaining that the appeal is devoid of merit the application was denied and Barrow was notified. He has filed a brief; Belcher has filed none.

Barrow admits in his brief the obvious fact that the evidence was sufficient to support the conviction of assault with intent to commit great bodily injury, but contends that the evidence was insufficient to support the conviction of robbery.

There was evidence of the following facts: On the evening of January 8, 1960, Lawrence Robbins parked his pickup truck near the Redwood Inn in Pomona and went into the inn. Both Belcher and Barrow were in the inn at this time. Robbins stated that he saw the appellants playing shuffleboard but that he did not know them. After several glasses of beer Robbins returned to his truck and discovered the appellants sitting in his truck. Belcher got out of the truck, took Robbins by the shoulder, shoved him against the truck door, jammed something into his side, stating that it was a gun, and then finally shoved him into the truck. Belcher took Robbins' wallet, and after discovering that it was empty asked Robbins where his money was. Robbins stated that what he had was in the wallet, which contained $7.00. At this point Belcher took a king-sized Coca Cola bottle and hit Robbins across the eye, cheek and head, and again asked Robbins where he was keeping his money. Robbins explained where the money was located in the wallet. Belcher then asked where the keys to the truck were. Robbins told him they were in his jacket and started to put his hand into his jacket pocket. Belcher again hit him over the eye with the same bottle. When the two appellants got the keys they started the truck up, and Belcher pushed Robbins' head down between his knees. After driving for five or six blocks they parked the car and Barrow left the truck, returning shortly with some whiskey. After sitting at this location for about 45 minutes they left and drove to another lot. When the driver opened the door and started to get out Mr. Robbins shoved him out of the truck. Robbins tried to break away, but Belcher caught him from behind and attempted to hold him. Robbins' jacket and tee shirt were torn from him as he attempted to escape. After a series of attempts to get away from the appellants Robbins managed to attract some

attention. He staggered over to a parked car occupied by a Mrs. Gunski and her 17-year-old son, grasped the car and asked for help. Both defendants grabbed him, pulled him away from the car, one of them struck him, knocked him against the car and to the ground. Mrs. Gunski and her son left. Both testified to the occurrence which took place beside their car. The police were called and the appellants, noticing the arrival of a police car, attempted to walk rapidly away. However, they were picked up by another patrol car and brought back and identified by Robbins as the two men who had assaulted him. During the booking process the police took a pair of glasses from Belcher and a watch and knife from Barrow, all of which belonged to Robbins. Robbins' wallet was found on the ground near the truck; it was empty. In the altercation Robbins suffered a broken jaw, lacerations around one eye, a fractured skull and severe chest injuries. Both defendants admitted that Robbins suffered the severe injuries in the altercation, although Barrow placed the blame on Belcher. They denied having robbed Robbins.

With respect to the charge of robbery, the testimony of Robbins, the discovery of his eyeglasses in the possession of Belcher, the watch in the possession of Barrow, and the empty wallet constituted convincing evidence of the robbery.

While a question of the sufficiency of the evidence, as a matter of law, to support a verdict or finding, may be presented to the appellate court for review, its duty stops when it has determined that there is some substantial supporting evidence, contradicted or uncontradicted; such a court will not weigh the evidence, pass on credibility of witnesses, or substitute its judgment for that of the trial court, but will uphold the verdict or finding even though it might have decided otherwise if it had occupied the place of the trial judge or jury. (*Massow* v. *Gianaclis,* 120 Cal.App.2d 24, 27 [260 P.2d 655].)

Appellant Barrow also contends that the victim's testimony was a running narrative, that the testimony lacks credibility and that the stories related by both defendants were identical and must have been true because they were jailed separately. These contentions lack merit.

The rule is well settled that whether a witness shall be permitted to testify in a narrative form instead of by questions and answers, is a question for the trial court's sound discretion, and unless prejudice is shown no abuse of discretion can be found. (*Silva* v. *Dias,* 46 Cal.App.2d 662,

664 [116 P.2d 496].) Neither the record nor the appellant's brief indicates prejudice flowing from the form of direct examination the trial court countenanced.

■■■ As to the contention that the appellants' stories must have been true because they were substantially the same, it is a settled principle of law that a jury may choose to believe either the testimony of the defense or the prosecution, or parts of both. The fact that both defendants gave the same accounts of the altercation did not prove that they were telling the truth. It merely presented a question for the jury, which preferred to believe Robbins. (*People* v. *Klinkenberg*, 90 Cal.App.2d 608, 626 [204 P.2d 47].)

■ Appellant Barrow further contends that there must be independent evidence of the corpus delicti other than the victim's uncorroborated statements. This contention is without merit. The cases cited by appellant state only that the corpus delicti must be proved by evidence outside of the declarations and admissions of the defendant. In the instant case it was the testimony of the victim that established the corpus delicti. It has long been recognized that the testimony of a complaining witness can establish the corpus delicti. (*People* v. *Paysen*, 123 Cal.App. 396, 399 [11 P.2d 431].)

There could have been no doubt that the "coke" bottle when used to inflict serious injuries, including fracture of the victim's skull, was a deadly weapon. The bottle, however, was used only when Robbins was first assaulted and as a means of facilitating the robbery. It is manifest that the court was of the opinion that the assault with the bottle was not a separate offense from the robbery and for that reason reduced the offense from assault with a deadly weapon to assault by means of force likely to produce great bodily injury. (Pen. Code, § 245.)

■ The assault in the parking lot came long after Robbins had been robbed. It was an entirely separate offense. Knocking Robbins down with a fist in the manner described constituted the offense as reduced by the court. (*People* v. *Tallman*, 27 Cal.2d 209 [163 P.2d 857].) Indeed, such a violent assault upon a man suffering from a fractured skull puts his life in danger.

The judgments are affirmed.

Vallée, J., and Ford, J., concurred.