Filed 9/18/13  P. v. Compian CA2/6

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION SIX

|  |  |
|---|---|
| THE PEOPLE,<br><br>    Plaintiff and Respondent,<br><br>v.<br><br>ALEX COMPIAN,<br><br>    Defendant and Appellant. | 2d Crim. No. B242940<br>(Super. Ct. No. 2009046937)<br>(Ventura County) |

Alex Compian appeals a judgment following his conviction of first degree murder (Pen. Code, § 187, subd. (a), 189), with jury findings that he "personally and intentionally discharged a firearm, which proximately" caused the death of Mario Cisneros.  We conclude, among other things, that:  1) the trial court did not err by denying a motion to exclude a witness's pretrial photographic identification and in-court identification of Compian, and 2) substantial evidence supports the finding the murder was deliberate and premeditated.  We affirm.

FACTS

Gustavo Nevarez knew Compian since Compian was 13 years old.  Nevarez's brother and Compian had lived at the same address.  Over the years Nevarez had seen Compian hundreds of times.

On the evening of December 24, 2009, Nevarez celebrated Christmas with family members.  Later that evening he went to Mario Cisneros's house at 220 Alpine

Street.  He knocked on the door.  Cisneros did not answer.  Nevarez saw Cisneros walking on the sidewalk near a neighbor's driveway.  He called out to Cisneros, but Cisneros did not hear him because he was talking to somebody.  Nevarez heard Cisneros say "Fuckin' rat.  Damn rat. . . . .  A rat, you are a rat."

Compian was "following" Cisneros.  He "cut across" a "neighboring yard" while pursing Cisneros.  As Cisneros walked toward his residence, Compian was "walking behind him."

Nevarez decided to walk to an area to wait for Cisneros.  While walking, Nevarez heard gunshots.  He saw Compian running away towards a car.

Nevarez went to a relative's house nearby and told them to call an ambulance.  He told his relatives that Compian had shot Cisneros.  Nevarez went back to Cisneros and told him, "Hold on, hang in there, we're going to go get help," but Cisneros died from his wounds.  Nevarez noticed that the car Compian ran to was no longer there.

Police Officer Sonia Sanchez arrived at the scene and drove Nevarez to the Oxnard police station.  Nevarez told Sanchez that Compian was "the shooter."  She showed him a photograph of Compian.  Nevarez identified him as the shooter and said he had known Compian for five years.

Joanna Hernandez was the mother of Compian's child.  During a phone call after the shooting, Compian told her that he had "smoked a homie" on Alpine Street and the victim had called him a rat.

In a pretrial motion, Compian's counsel moved to exclude the evidence of Nevarez's photo identification of Compian at the police station.  He argued that the procedure was "unduly suggestive."  He requested that no "eyewitness identification in court" be introduced.  The trial court denied the motion.

At trial, Nevarez identified Compian as the person he saw running from the scene of the shooting.

Gabriel Anthony Cisneros (Gabriel), the victim's son, testified that before the shooting he heard a man yell, "What's up, homie?"  It was not his father's voice.

2

Gabriel believed the angry tone in the man's voice while uttering this phrase was intended to deliver the message: "I have a problem with you. What are we going to do about it or how are we going to solve it?"

Samuel Frias, the victim's stepson, testified that before the shooting he heard a man "arguing" and "cussing . . . really loud." He said, "[I]t was not [Cisneros's] voice."

Edwin Jones, a forensic scientist, testified the victim was behind a wooden gate in the yard of a residence when he was shot. The shooter was outside the fence. Bullets passed through the wooden fence showing "clean circular holes."

Ronald O'Halloran, the Ventura County chief medical examiner, testified he performed an autopsy on Cisneros. He died of gunshot wounds to "the upper torso." Two bullets penetrated his back and a third bullet hit his "upper thigh area."

Compian did not testify or present a defense case.

DISCUSSION

*Excluding the Pretrial and In-Court Identifications of Compian*

Compian contends the trial court erred by denying his motion to exclude Nevarez's pretrial and in-court identifications of him. He claims the pretrial identification was "impermissibly suggestive" because police showed Nevarez only a single photograph--a picture of Compian. He argues Nevarez's in-court identification was consequently "tainted" by this suggestive procedure. We disagree.

"[T]o determine whether the admission of identification evidence violates a defendant's right to due process of law, we consider (1) whether the identification procedure was unduly suggestive and unnecessary, and, if so, (2) whether the identification itself was nevertheless reliable under the totality of the circumstances . . . ." (*People v. Cunningham* (2001) 25 Cal.4th 926, 989.) Important factors include "the opportunity of the witness to view the suspect at the time of the offense, the witness's degree of attention," at that time, and the "accuracy of his or her prior description of the suspect . . . ." (*Ibid.*) We also consider "the level of certainty demonstrated at the time of

3

the identification, and the lapse of time between the offense and the identification." (*Ibid*.)

The defendant has "the burden of showing an unreliable identification procedure." (*People v. Ochoa* (1998) 19 Cal.4th 353, 412.) We make an "independent review" to decide whether the trial court correctly found the identification procedure was not suggestive. (*People v. Kennedy* (2005) 36 Cal.4th 595, 609, overruled on other grounds in *People v. Williams* (2010) 49 Cal.4th 405, 459.)

Compian contends the pretrial identification was unfair and procedurally invalid because police only showed Nevarez a photograph of him. But our Supreme Court has held that such single suspect identifications are not prohibited. (*People v. Medina* (1995) 11 Cal.4th 694, 753.) "[A]lthough a one-person showup may pose a danger of suggestiveness, such showups 'are not necessarily or inherently unfair. [Citation.] Rather, all the circumstances must be considered.'" (*Ibid.*) Excluding evidence of this police procedure is not required where there is proof that the identification was reliable. (*People v. Cunningham*, *supra*, 25 Cal.4th at p. 989.)

The trial court found there was no "unduly suggestive" identification and the police did not "plant in a witness' mind an idea of who they believe committed the crime." The court was correct.

Nevarez identified Compian as the shooter *before* the police showed him the photograph. The reliability of the identification was high as Nevarez had known Compian for five years. Over the years he said had seen Compian on 500 prior occasions. Consequently, he did not need a photograph to identify him. The line-up cases cited by Compian involve witnesses identifying suspects who are strangers. That is not the case here. Moreover, Officer Sanchez testified she only showed Nevarez the picture to confirm what he had previously told her about who committed the crime. Nevarez told his relatives Compian committed the crime *before* the police arrived at the scene. These facts show the pretrial identification was not the product of any police suggestive measures. (*People v. Harris* (1985) 175 Cal.App.3d 944, 958-959; *People v.*

4

*Cooks* (1983) 141 Cal.App.3d 224, 307 [in-court identifications were not inadmissible where witnesses relied on "their observations of the defendants at the time of the crimes . . . independent of pretrial identifications"].)

Moreover, any error would be harmless. The evidence of Compian's guilt is compelling given the strength of the prosecution's evidence. After the shooting, Compian made highly incriminating admissions to Hernandez. He said that he "smoked a homie" on Alpine Street and that the victim had called him a rat. He said, "They're gonna try to get me for murder. And you know what? I'm not gonna be out for a long time . . . ." He also showed his consciousness of guilt by instructing Hernandez to "lie" to the police and fabricate a story if she was questioned about him. Expert testimony confirmed that he had gunshot residue on his hands.

*Substantial Evidence*

Compian contends the evidence is insufficient to support a conviction for first degree murder. He claims the record does not support a finding of deliberation and premeditation because it only shows he shot Cisneros after a "spontaneous" "encounter," and he then "departed." We disagree.

"The role of an appellate court in reviewing the sufficiency of the evidence is limited." (*People v. Ceja* (1993) 4 Cal.4th 1134, 1138.) We review the record in the light "most favorable to the judgment." (*Ibid.*) We do not weigh the evidence or decide the credibility of the witnesses. (*People v. Belcher* (1961) 189 Cal.App.2d 404, 407.) In attacking the sufficiency of the evidence, the appellant has a strong burden to meet. "'The reviewing court presumes in support of the judgment the existence of every fact the jury could reasonably deduce from the evidence.'" (*People v. Halgren* (1996) 52 Cal.App.4th 1223, 1232.)

Murder is "'the unlawful killing of a human being . . . with malice aforethought.' [Citation.] First degree murder is any 'kind of willful, deliberate, and premeditated killing.'" (*People v. Nazeri* (2010) 187 Cal.App.4th 1101, 1111.) "Second degree murder is any kind of murder that doesn't fall within the definition of first degree

5

murder." (*Ibid.*) For first degree murder, the evidence must support the finding that the defendant killed the victim "'as the result of preexisting reflection rather than unconsidered or rash impulse.'" (*People v. Manriquez* (2005) 37 Cal.4th 547, 577.)

Here the jury was instructed on first and second degree murder. The trial court advised jurors that "[p]rovocation may reduce a murder from first degree to second degree." It instructed them that "[a] decision to kill made rashly, impulsively, or without careful consideration is not deliberate and premeditated." But the jury unequivocally rejected Compian's claim that his crime was the result of an "unconsidered or rash impulse" when it found him guilty of first degree murder. (*People v. Manriquez*, *supra*, 37 Cal.4th at p. 577.)

"[A]n appellate court may not substitute its judgment for that of the jury." (*People v. Ceja*, *supra*, 4 Cal.4th at p. 1139.) "If the circumstances reasonably justify the jury's findings, the reviewing court may not reverse the judgment because it believes that the circumstances might also support a contrary finding." (*Ibid.*)

"[P]remeditation can occur in a brief period of time." (*People v. Perez* (1992) 2 Cal.4th 1117, 1127.) It can happen in "a matter of seconds." (*People v. Brito* (1991) 232 Cal.App.3d 316, 324.) "'The true test is not the duration of time as much as it is the extent of the reflection. Thoughts may follow each other with great rapidity and cold, calculated judgment may be arrived at quickly . . . .'" (*Perez*, at p. 1127.) "[A] killing resulting from preexisting reflection, of any duration, is readily distinguishable from a killing based on unconsidered or rash impulse." (*People v. Solomon* (2010) 49 Cal.4th 792, 813.)

Cisneros was outside a residence at the time he was shot. He posed no threat to Compian. Cisneros was particularly vulnerable as Compian approached him from behind when he (Cisneros) was unarmed and intoxicated. Compian fired multiple shots. The jury could reasonably find deliberation and premeditation from the "manner of killing," which involved multiple gun shots. (*People v. Silva* (2001) 25 Cal.4th 345, 369.) In *Silva*, our Supreme Court stated, "The manner of killing--multiple shotgun

6

wounds inflicted on an unarmed and defenseless victim who posed no threat to defendant--is entirely consistent with a premeditated and deliberate murder." (*Ibid.*)

The People suggest the killing was execution style. "[A]n execution-style killing may be committed with such calculation that the manner of killing will support a jury finding of premeditation and deliberation, despite little or no evidence of planning and motive." (*People v. Lenart* (2004) 32 Cal.4th 1107, 1127.) Here there was no execution style shot to the head. (*People v. Stewart* (2004) 33 Cal.4th 425, 495.) But courts have upheld findings of premeditation and deliberation in cases where defendants shot helpless or retreating victims in the back. (*People v. Manriquez*, *supra*, 37 Cal.4th at p. 578; *People v. Brito*, *supra*, 232 Cal.App.3d at p. 323.) A "deliberate intent to kill" also may be inferred from the act of firing shots "at a vital area of the body," such as the upper torso. (*People v. Koontz* (2002) 27 Cal.4th 1041, 1082.) Here the two bullets that penetrated Cisneros's back also penetrated his left lung. One bullet caused a "perforation in his heart." That single shot would cause a "fatal" injury. Jurors could draw inferences about Compian's state of mind from his act of firing two shots to the back. (*Manriquez*, at p. 578.) His state of mind is also shown by the callous language he used to describe this incident. He said that he "smoked a homie."

The jury could also reasonably infer from Compian's other actions that he had time to deliberate and planned the attack. Compian followed Cisneros before he shot him. Jurors could draw a reasonable inference that he selected a path to attack his victim. While armed, he "cut across" a "neighboring yard" to catch up with Cisneros. (*People v. Koontz*, *supra*, 27 Cal.4th at p. 1082 [evidence that defendant followed the victim supports a finding of planning].)

Motive may also be considered in evaluating evidence of preexisting reflection. (*People v. Solomon*, *supra*, 49 Cal.4th at pp. 813-814.) The jury could find that Compian's admission to Hernandez showed he had a motive to kill because Cisneros called him a rat. By its verdict the jury necessarily found no evidence of provocation to support a second degree murder verdict. (*People v. Ward* (2005) 36 Cal.4th 186, 214.)

7

Jurors could reasonably find that while following Cisneros, Compian made the "cold, calculated judgment" that he had to be "smoked" for his remarks. (*People v. Perez*, *supra*, 2 Cal.4th at p. 1127.) In addition, from Gabriel's and Frias's testimony they could also infer preexisting reflection. It showed Compian's anger or problem with Cisneros before the shooting supported a motive for the killing. The evidence is sufficient.

The judgment is affirmed.

NOT TO BE PUBLISHED.


GILBERT, P.J.


We concur:


YEGAN, J.


PERREN, J.

8

Charles W. Campbell, Jr., Judge

Superior Court County of Ventura

_____

Mark D. Lenenberg, under appointment by the Court of Appeal, for Defendant and Appellant.

Kamala D. Harris, Attorney General, Dane R. Gillette, Chief Assistant Attorney General, Lance E. Winters, Senior Assistant Attorney General, Paul M. Roadarmel, Jr., Supervising Deputy Attorney General, Daniel C. Chang, Deputy Attorney General, for Plaintiff and Respondent.