Filed 4/21/14  P. v. Thomas CA2/6

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION SIX

|  |  |
|---|---|
| THE PEOPLE,<br><br>    Plaintiff and Respondent,<br><br>v.<br><br>JONATHAN THOMAS,<br><br>    Defendant and Appellant. | 2d Crim. No. B250558<br>(Super. Ct. No. SA082183-01)<br>(Los Angeles County) |

Jonathan Thomas appeals a judgment revoking his probation after the trial court conducted a probation revocation hearing and found that he possessed methamphetamine for sale.  (Health & Saf. Code, § 11378.)  We conclude, among other things, that the trial court's finding is supported by substantial evidence.  We affirm.

FACTS

On February 11, 2013, Thomas pled no contest to transporting and selling a controlled substance.  (Health & Saf. Code, § 11352, subd. (a).)  The trial court "suspended" imposition of sentence and placed him on probation for three years.  A probation condition required that he "not use or possess any narcotics, dangerous or restricted drugs or associated paraphernalia."  Four months later Thomas was arrested for violating this probation condition.

At the probation revocation hearing, Probation Officer Alfred Burruel testified that on the morning of June 6, 2013, probation officers entered the residence of

probationer Virgil Gulley, Jr. because his "G.P.S. monitoring bracelet" was "pinging." During a "protective sweep" of the residence, they saw Thomas sleeping on the floor in the bedroom of the home. Thomas was on probation with "search" conditions. Burruel said there was a duffle bag in a closet which had a "sliding" door, "five to six feet away from where Mr. Thomas was laying." The duffle bag "contained numerous plastic baggies" of "a white crystallized substance resembling methamphetamine." The size of the bedroom was "10 by 15" feet and it had one closet. A probation officer found a digital scale in a dresser drawer "five to seven feet away" from Thomas.

Vamari Gulley (Gulley) was also in the bedroom. Gulley testified that he had lived at the residence since 1993. He shared the bedroom with Thomas who was his cousin. Thomas had been there for "a day" and he "doesn't usually stay" there. Gulley testified that he did not own the duffle bag or the digital scale. He said, "[A] lot of people come and go and stay at [the] house," but they do not "bring stuff to spend the night."

Deputy Sheriff Michael Prottung testified that when he entered the bedroom, the duffle bag was on top of the dresser, and the dresser was inside the closet. In addition to the narcotics, the duffle bag also contained "items that were consistent with someone who is staying somewhere other than home." Prottung said the duffle bag contained "several pair of underwear, socks, T-shirt, hair care, cream, and a toothbrush." "[T]here was an outfit that would be basically for one day." Thomas told Prottung that he did "not live there."

Thomas did not testify at the probation revocation hearing. His trial counsel argued that Gulley's testimony was "pretty self-serving," and "[Gulley] knows that he could be in trouble for narcotics and of course he's going to deny . . . that those drugs are his or he has any knowledge of the drugs or the scale."

The trial court found Thomas had violated his probation conditions. It said Gulley "was credible" and the duffle bag did not belong to him. It said, "There's every reason to believe that this bag belongs to the defendant who's sleeping nearby. . . . The defendant is traveling. There's a bag that's typical of any person who travels near him." The court revoked probation and sentenced Thomas to three years in county jail.

2

## DISCUSSION

### *Substantial Evidence*

Thomas contends there is insufficient evidence to support the finding that he violated a probation condition by possessing methamphetamine. We disagree.

A trial court may revoke probation where it "has reason to believe that the person has violated any of the conditions of his or her probation." (*People v. Urke* (2011) 197 Cal.App.4th 766, 772.) "We review a probation revocation decision pursuant to the substantial evidence standard of review . . . and great deference is accorded the trial court's decision . . . ." (*Id.* at p. 773.) "The role of the appellate court in reviewing the sufficiency of the evidence is limited." (*People v. Ceja* (1993) 4 Cal.4th 1134, 1138.) We review the record in the light "most favorable to the judgment." (*Ibid.*) We do not weigh the evidence or decide the credibility of the witnesses. (*People v. Belcher* (1961) 189 Cal.App.2d 404, 407.)

"The essential elements of unlawful possession of a controlled substance are 'dominion and control of the substance in a quantity usable for consumption or sale, with knowledge of its presence and of its restricted dangerous drug character. Each of these elements may be established circumstantially.'" (*People v. Martin* (2001) 25 Cal.4th 1180, 1184.) "All surrounding facts and circumstances may be considered in determining knowing possession of narcotics . . . ." (*People v. Schumacher* (1967) 256 Cal.App.2d 858, 865.)

"The inference of dominion and control is easily made when the contraband is discovered in a place over which the defendant has general dominion and control: his residence . . . , his automobile . . . , or his personal effects . . . ." (*People v. Jenkins* (1979) 91 Cal.App.3d 579, 584, citations omitted.) "Exclusive possession is not necessary. A defendant does not avoid conviction if his right to exercise dominion and control over the place where the contraband was located is shared with others." (*People v. Rushing* (1989) 209 Cal.App.3d 618, 622.) "[T]he fact that other persons had access to the premises in which the narcotic was found does not negative a finding of joint possession and control." (*People v. Roberts* (1964) 228 Cal.App.2d 722, 726.)

3

But "proof of opportunity of access to a place where narcotics are found, without more, will not support a finding of unlawful possession." (*People v. Redrick* (1961) 55 Cal.2d 282, 285.)

Thomas contends the evidence only shows that he had access to a place where narcotics were found. He claims the trial court could not draw a reasonable inference to support its finding that he possessed the duffle bag that contained the narcotics. We disagree.

From Gulley's testimony, the trial court could reasonably infer that there were only two occupants of the bedroom--Gulley and Thomas, and that the duffle bag did not belong to Gulley. Gulley testified he did not own a duffle bag. Thomas claimed Gulley's testimony was self-serving and that Gulley lied about not owning that bag. But the trial judge expressly found Gulley was credible. The trial court exclusively decides the credibility of the witnesses. (*People v. Belcher*, *supra*, 189 Cal.App.2d at p. 407.)

From Prottung's testimony, the trial court could infer that the duffle bag contained items for someone who was travelling and did not live there. Those items included underwear, socks and a toothbrush. Thomas was visiting. He told Prottung that he did not live there. Gulley said Thomas had been there for "a day." Prottung testified that the bag contained "an outfit that would be basically for one day." The trial court accepted the prosecution's claim that "the only one who would need a duffle bag" would be Thomas. The bag was "five to six feet away from where Mr. Thomas was laying."

Thomas was no stranger to narcotics. His history included a prior recent conviction for transporting and selling a controlled substance. Burruel testified the duffle bag contained "small baggies with the meth." There was a digital scale five to seven feet from Thomas. Prottung testified the scale was small, lightweight, and "would easily fit inside of that duffle bag." There was a "white residue" on the scale. Gulley testified that he did not own that digital scale, and the trial court found that testimony credible. Burruel testified that a probation officer also saw "a black replica handgun" inside a shoe box "to the left of Mr. Thomas." It was "five to seven feet away" from him.

4

Thomas cites to evidence that he claims supports his position. He views the police investigation to be incomplete. He notes, among other things, that the prosecution did not present any fingerprint or DNA evidence and that he denied owning the bag. But at this stage, the issue is not whether some evidence favors the defense, it is only whether substantial evidence supports the judgment. Thomas cites to the part of Gulley's testimony where Gulley said other people visited the residence. But the trial court could reasonably reject any inference that the duffle bag belonged to them because Gulley also testified that those people did not "bring stuff to spend the night." We have reviewed Thomas's remaining contentions and we conclude he has not shown error. The evidence is sufficient.

The judgment is affirmed.

NOT TO BE PUBLISHED.


GILBERT, P. J.

We concur:


YEGAN, J.


PERREN, J.

5

Mark E. Windham, Judge

Superior Court County of Los Angeles

_____

Steven A. Brody, under appointment by the Court of Appeal, for Defendant and Appellant.

Kamala D. Harris, Attorney General, Dane R. Gillette, Chief Assistant Attorney General, Lance E. Winters, Senior Assistant Attorney General, Margaret E. Maxwell, Supervising Deputy Attorney General, Seth McCutchen, Deputy Attorney General, for Plaintiff and Respondent.