Filed 8/26/14  P. v. Hopkins CA1/1

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIRST APPELLATE DISTRICT

DIVISION ONE

| | |
|---|---|
| THE PEOPLE,<br><br>        Plaintiff and Respondent,<br><br>v.<br><br>KEVIN L. HOPKINS,<br><br>        Defendant and Appellant. | A138452<br><br>(Contra Costa County<br>Super. Ct. No. 51115138) |

Defendant Kevin L. Hopkins appeals from an order revoking probation and imposing a previously suspended six-year prison sentence.  In revoking probation, the trial court found that Hopkins was not credible in testifying about his probation compliance.  We fully accept this finding, but we conclude that the record nonetheless lacks substantial evidence that Hopkins willfully violated his probation.  We also conclude that we must accept Hopkins's term of probation even though he was ineligible for probation when he was placed on it.  Accordingly, we reverse.

FACTUAL AND PROCEDURAL
BACKGROUND

The underlying crime that gave rise to the imposition, and eventual revocation, of probation was a 2010 incident in which Hopkins shoplifted a boxed gift set of alcohol from a store in El Cerrito.[1]  At the time of the offense, Hopkins had a long string of prior convictions.  The information filed by the district attorney charged Hopkins with one

---

[1] Because the case was resolved by plea, our understanding of the facts of the case comes from the probation report, which in turn relied on police reports.

1

count of petty theft with a prior[2] and alleged nine prior convictions, including six prior strikes (three robberies in 1983 and three robberies in 1990) and five prior convictions for which Hopkins had served a prison term under section 667.5, subdivision (b). Hopkins eventually entered into a plea agreement in which he pleaded no contest to the charge and admitted one prior strike conviction (§§ 667, subds. (b)-(i), 1170.12). Under the agreement, Hopkins was placed on probation for four years, with a suspended six-year prison sentence. The agreement included a probation condition requiring Hopkins to complete treatment at the Jericho Project drug and alcohol recovery program. Hopkins accepted this condition.

Hopkins reported to the Jericho Project, but he was denied admission because he had civil litigation pending against the county. The only evidence in the record about this, other than Hopkins's testimony at his probation-revocation hearing, was a letter from the Jericho Project stating that Hopkins had "expressed the need and urgency to pursue several civil legal matters," and that staff "determined that he would not be able to properly manage his legal matters while participating in [the program]." At the probation-revocation hearing, no witness from the Jericho Project was called to testify and the only other evidence introduced about the letter was testimony from a probation officer who reviewed Hopkins's file and simply referred to the letter's content.

After being denied admission in the Jericho Project, Hopkins sought, and the trial court approved, a modification of the probation condition to allow him to complete treatment at the Oakland Salvation Army rehabilitation program.

Four days after this modification was approved, Hopkins started to send letters to the trial court claiming to be unable to participate in the Salvation Army program due to a back injury, and he asked to withdraw his plea and have new counsel appointed. A letter from his neurologist was also faxed to the court confirming that Hopkins suffered from lumbar spondylosis, which limited his ability to perform certain functions, such as

---

[2] Hopkins was charged under Penal Code sections 484 and 666. All subsequent statutory references are to the Penal Code.

2

"lifting over 25 pounds, repetitive bending, stooping, pushing, repetitive lifting or pulling." In any event, after about six weeks into the Salvation Army program, Hopkins injured his knee and was taken to a nearby hospital. He was then discharged from the program because he was unable to negotiate stairs at the Salvation Army program that needed to be traversed several times a day.

A petition to revoke probation was filed on the grounds of "program failure." It specified that "[o]n 9/19/12, the court ordered the defendant to complete a year program at the Salvation Army Program in Oakland, CA. On 9/19/12, the defendant entered the program. However, on 11/02/12, the defendant was terminated from the program." The petition made no allegation about Hopkins's denied admission in the Jericho Project. After a contested revocation hearing at which Hopkins represented himself, the trial court found that Hopkins willfully violated his probation, and it then revoked his probation and imposed the six-year prison sentence.

The court summarized its findings with the following remarks: "All right. I listened very carefully to the evidence. I also worked on this case quite a bit initially with Mr. Hopkins, both in pro per and when he was represented by counsel, which he has gone in and out of pro per status. [¶] Frankly, I find that Mr. Hopkins was not credible whatsoever. I think that he's agreed to things that either he knew he couldn't do or chose not to do; and he manipulated Jericho Project, he manipulated this Court and then manipulated the Salvation Army. [¶] Therefore I am finding that he is in violation of his probation; and I am imposing the six[-]year state prison suspended as follows: [¶] I am imposing the aggravated term of three years state prison on Count 1, doubling it to six years. He did admit one strike. He has six strikes, but he admitted one."

On appeal, Hopkins argues that he did not willfully violate his probation and the Attorney General argues that he did. After we received the parties' initial round of briefing, we requested supplemental briefing on whether probation had been authorized in the first instance in light of Penal Code section 667, subdivision (c)(2), which precludes probation for defendants who have been convicted of one or more strikes.

3

DISCUSSION

## I.    *The standard of review.*

Section 1203.2, subdivision (a) authorizes the trial court to revoke probation after proper notice and a hearing "if the interests of justice so require and the court, in its judgment, has reason to believe from the report of the probation or parole officer or otherwise that the person has violated any of the conditions of his or her supervision, has become abandoned to improper associates or a vicious life, or has subsequently committed other offenses, regardless whether he or she has been prosecuted for such offenses." A decision to revoke probation involves two components: (1) a retrospective factual question whether the probationer has violated a condition of probation, and (2) a discretionary determination by the court whether the violation warrants revocation of probation and sentencing to prison. (*Black v. Romano* (1985) 471 U.S. 606, 611.) The court has discretion to revoke, modify, or continue probation as originally set, depending upon its analysis of the circumstances before it. (*People v. Hawthorne* (1991) 226 Cal.App.3d 789, 792; § 1203.2, subd. (b)(1).)

The facts supporting a revocation of probation need only be proven by a preponderance of the evidence (*People v. Rodriguez* (1990) 51 Cal.3d 437, 439), but the evidence must support a conclusion that the probationer willfully violated the terms and conditions of probation. (*People v. Cervantes* (2009) 175 Cal.App.4th 291, 295.) Noncompliance is not willful when it is attributable to circumstances beyond a probationer's control. (*Ibid.*) We review the factual finding for substantial supporting evidence. Under this test, we determine only whether, in view of the entire record, there is substantial evidence, contradicted or uncontradicted, to support the trial court's decision. (*People v. Kurey* (2001) 88 Cal.App.4th 840, 848.) To be " 'substantial,' " evidence must be " 'of ponderable legal significance[,] reasonable in nature, credible, and of solid value.' " (*People v. Johnson* (1980) 26 Cal.3d 557, 576; *People v. Cole* (1994) 23 Cal.App.4th 1672, 1678.) We give great deference to the trial court and resolve all inferences and intendments in favor of the judgment. (*Kurey*, at pp. 848-849.)

4

Once the trial court has found a violation of probation it must "decide whether under all of the circumstances the violation of probation warrants revocation." (*People v. Avery* (1986) 179 Cal.App.3d 1198, 1204.) On this second step the trial court is vested with broad discretion (*People v. Jones* (1990) 224 Cal.App.3d 1309, 1315), and its decision is reviewed only for abuse of that discretion. (*People v. Rodriguez, supra*, 51 Cal.3d at p. 443.) " '[O]nly in a very extreme case should an appellate court interfere with the discretion of the trial court in the matter of denying or revoking probation. . . .' " (*Ibid.*)

II.     *The record lacks substantial evidence that Hopkins willfully violated his probation.*

Hopkins argues that there was insufficient evidence for the trial court to find that he willfully violated the terms of his probation because he was prevented from completing his treatment programs for medical and other reasons. The Attorney General argues that Hopkins willfully violated his probation because he was manipulating the system and "program shopping." We conclude that the record lacks substantial evidence to support a finding that Hopkins willfully violated his probation even though we fully accept the trial court's determination that Hopkins was not credible in testifying about his probation compliance.

We begin by discussing the evidence presented about Hopkins's dealings with the Jericho Project.[3] As mentioned above, this evidence consisted of a letter from the Jericho Project stating that Hopkins had "expressed the need and urgency to pursue several civil legal matters," and that staff "determined that he would not be able to properly manage his legal matters while participating in [the program]."[4] Other than testimony from

---

[3] Hopkins did not argue below, and he does not argue on appeal, that he was given inadequate notice that his dealings with the Jericho Project could be a basis for his probation revocation. He has thus forfeited any such claim. (*People v. Holt* (1997) 15 Cal.4th 619, 672; *People v. Buford* (1974) 42 Cal.App.3d 975, 982.)

[4] Hopkins admits that he had a lawsuit against the county, evidently arising out of an alleged attack on him by another inmate while incarcerated in a detention center.

5

Hopkins,[5] essentially no other evidence was presented to explain the letter or to further describe the Jericho Project's decision to deny Hopkins admission. But according to the probation officer who reviewed Hopkins's file, Hopkins "immediately contacted the Court and got placed back on the court calendar" when he was denied admission into the Jericho Project.

The trial court made it clear that it believed Hopkins was not taking his recovery seriously when it granted Hopkins's request for an alternative placement at the Salvation Army program: "Mr. Hopkins, you are clean. You are very lucky because if you were dirty I would have just sentenced you to six years state prison. [¶] I am not happy about this at all. I think you are full of it. I think that you are playing games. I think that you are unwilling to get into recovery. [¶] The only thing you should have said at intake is 'I am an addict and I need to get this matter addressed,' not 'I have some civil matters to take care of.'" The court also warned Hopkins about his placement at the Salvation Army program by stating that "if anything else happens, that's it. It's over." The court mentioned that it was "very familiar" with the Salvation Army program and "I am letting you do that in lieu of the Jericho Project with great reluctance and letting you know that this is it."

At the probation-revocation hearing, however, the undisputed evidence introduced about Hopkins's discharge from the Salvation Army was that it was due to a medical reason. A Salvation Army intake coordinator testified that Hopkins was discharged because "[h]e hurt his knee at work and then went to the hospital at Highland and came back, and then we medically discharged him because he wasn't able to do the program." When asked again about the reason for the discharge, the representative stated, "We have

---

[5] Hopkins testified, "I went to Jericho Project—they asked me did I have any pending civil matters. I told them I had a pending civil matter in federal court, and that was it. They terminated me the next day. I didn't know why they terminated me." On cross-examination, he stated, "I didn't go to Jericho Project with the expectation of getting discharged. When Jericho Project asked me did I have any pending court cases, I told them I had a civil matter pending in federal court. That's it. That's all. [¶] I didn't tell them it was urgent that I attend any medical, court dates, anything. I just told them I had a court case, that's it. I had no expectations of getting discharged."

three flights of stairs that the guys have to go up on a daily basis, three or four times a day. And if his knee is in a brace he won't be able to manipulate the stairs so he would be able to perform the work therapy." The intake coordinator also testified that there were no compliance problems by Hopkins at the program before he was discharged and that he had participated in all aspects of the program. There was nothing in this testimony, and no other evidence was presented, that Hopkins had not actually been injured, had exaggerated his injury, or had been discharged from the Salvation Army program for any reason other than his medical condition.

We have no difficulty accepting the trial court's finding that Hopkins was not credible. The judge who revoked Hopkins's probation had a long history with Hopkins. The judge first became involved in the case a year before the probation-revocation hearing, saw Hopkins through at least two counsel appointments and withdrawals, presided at several pretrial proceedings, accepted Hopkins's no-contest plea, granted Hopkins probation, and modified the probation condition when Hopkins was rejected from the Jericho Project. Furthermore, the judge was familiar with Hopkins's criminal history, which included crimes of moral turpitude. This judge was in a good position— certainly far better than ours—to evaluate Hopkins's testimony. (See *Abbott v. Mandiola* (1999) 70 Cal.App.4th 676, 682–683 ["Typically, an appellate court has only a cold transcript, exhibits, and papers from the trial court's file to go on. . . . [C]redibility determinations require a personal presence that a cold transcript cannot convey"]; *People v. Belcher* (1961) 189 Cal.App.2d 404, 407 [appellate court does not "weigh the evidence, pass on credibility of witnesses, or substitute its judgment for that of the trial court, but will uphold the verdict or finding even though it might have decided otherwise if it had occupied the place of the trial judge or jury"].)

But a finding that Hopkins's testimony was not credible did not create evidence that there was a willful probation violation. Even discounting Hopkins's testimony, we are unable to find substantial evidence of such a violation. The letter from the Jericho Project is not evidence that Hopkins willfully violated his probation condition since all it says is that he was denied admission because he had pending lawsuits. No evidence was

7

presented to explain the letter or to provide any context for it. Although we can speculate that Hopkins may have been denied admission because he balked at complying with rules prohibiting participants from engaging in activities that will distract them from their treatment, there is simply nothing in the record to permit us to conclude that such a speculation is based on substantial evidence.

Similarly, the record lacks substantial evidence that Hopkins's discharge from the Salvation Army program was based on anything other than his medical condition. The Salvation Army intake coordinator testified that Hopkins was discharged because he sustained a knee injury while at the program and could no longer climb the stairs that participants in the program were required to use. This testimony was uncontradicted. It is true that evidence was presented that Hopkins had sought a transfer from the Salvation Army to a less strict program called Options. And it is true that the probation officer who reviewed Hopkins's file testified that, either before or after Hopkins was discharged from the Salvation Army, she had spoken with Hopkins's parole agent who said that Hopkins was "trying to basically program shop, and find whatever program he wanted to go to." But whether or not Hopkins tried to get into another program is immaterial to whether his discharge from the Salvation Army was due to his willful behavior.

The trial court was in a difficult position at the time of Hopkins's probation-revocation hearing. Hopkins had a long criminal history, and the court believed he was not taking his substance-abuse treatment seriously and was being manipulative. Still, the record before us lacks substantial evidence to support a conclusion that he willfully failed to complete his treatment at the Jericho Project or the Salvation Army.

III. *The original sentence imposing probation must be executed because the time to challenge it has passed.*

Hopkins should not have been placed on probation. Penal Code section 667, subdivision (c)(2) provides that "[n]otwithstanding any other law, if a defendant has been convicted of a felony and it has been pled and proved that the defendant has one or more prior serious and/or violent felony convictions as defined in subdivision (d), the court shall adhere to each of the following: [¶] . . . [¶] (2) Probation for the current offense

8

shall not be granted, nor shall execution or imposition of the sentence be suspended for any prior offense." "Probation is not an option for the convicted Three Strikes defendant. 'The language of section 667, subdivisions (c) and (e) is entirely clear and without ambiguity. A defendant who is in the 'strike zone' by reason of a prior conviction for a serious or violent felony is not eligible for probation.' (*People v. Nobleton* (1995) 38 Cal.App.4th 76, 81.)" (*People v. Superior Court* (*Roam*) (1999) 69 Cal.App.4th 1220, 1228.)

In their supplemental briefing, the parties acknowledge that Hopkins's probation was unauthorized, but each asks this court to rule in its favor on the willfulness of Hopkins's probation violation and then disregard the error. The Attorney General argues that a conclusion by us that the probation violation was willful renders moot whether Hopkins was properly placed on probation because Hopkins will be reincarcerated. But she argues that if we conclude that the probation violation was not willful, we "cannot order probation reinstated" and must instead set aside the plea bargain and return the parties to the status quo ante.

Hopkins argues that a conclusion by us that the probation violation was not willful requires us to reinstate probation because it is too late to contest the legality of the plea deal. He argues that the sentence was imposed in excess of jurisdiction, but not without fundamental jurisdiction, and hence neither party should be allowed to " 'trifle with the courts' " by attempting to "better the bargain" through the appellate process. (*People v. Flood* (2003) 108 Cal.App.4th 504, 508.)

Neither party here has attempted to trifle with the court since we, on our own initiative, raised the question whether probation was properly imposed. Nonetheless, we conclude that we may not tamper with the original sentence at this juncture. The imposition of probation was approved by the trial court, and the time to challenge it on appeal has long since expired. Thus, the judgment granting probation is final and cannot be challenged by either party on appeal from a subsequent revocation of probation. (*People v. Ramirez* (2008) 159 Cal.App.4th 1412, 1423-1428.)

9

In agreeing to plead no contest in exchange for a grant of probation, Hopkins surrendered his right to appeal. And although the prosecution could have refused to agree to probation and appealed its imposition (§ 1238, subd. (a)(10)), it declined to do so. It thereby forfeited its ability to challenge probation now.

We are aware of the rule that an unauthorized sentence may be corrected "whenever the error comes to the attention of the reviewing court." (E.g., *People v. Dotson* (1997) 16 Cal.4th 547, 554, fn. 6.) This constitutes an exception to the rule generally disallowing appeal of sentencing errors not raised in the trial court. (*People v. Scott* (1994) 9 Cal.4th 331, 354.) But this exception applies only where the appellate court properly has before it the order imposing the illegal sentence. In contrast, where, as here, probation was granted as part of an unauthorized sentence that was reduced to a final judgment without either party appealing, we conclude we are without jurisdiction to reverse or modify the probation on an appeal from its later revocation. (*People v. Ramirez, supra,* 159 Cal.App.4th at pp. 1423-1428.)

DISPOSITION

The judgment revoking probation is reversed.

 

 

_____
Humes, P.J.

We concur:

_____
Margulies, J.

_____
Banke, J.