[No. H014136. Sixth Dist. July 8, 1996.]

THE PEOPLE, Plaintiff and Respondent, v.
CHU TRAN, Defendant and Appellant.

**COUNSEL**

Robert R. Riggs, under appointment by the Court of Appeal, for Defendant and Appellant.

Daniel E. Lungren, Attorney General, George Williamson, Chief Assistant Attorney General, Ronald A. Bass, Assistant Attorney General, Catherine A. Rivlin and Michael E. Banister, Deputy Attorneys General, for Plaintiff and Respondent.

**OPINION**

**WUNDERLICH, J.**—Defendant Chu Tran was convicted by a jury of one count of felony stalking and two counts of assault with a deadly weapon. The jury also found true personal use allegations. He admitted a prior prison conviction, and was sentenced to a total of six years in prison. He now challenges the constitutionality of the stalking statute, the sufficiency of the evidence of assault with a deadly weapon, and the reasonable doubt instruction. We reject these challenges and affirm the judgment.

## Statement of Facts

Viewed in accordance with the usual rules on appeal (*People* v. *Mincey* (1992) 2 Cal.4th 408, 432 [6 Cal.Rptr.2d 822, 827 P.2d 388]), the record shows as follows. Around 2 a.m. on December 17, 1994, Police Officer Alan Pham was summoned to the First Club[1] in downtown San Jose to act as a Vietnamese interpreter in the investigation of a disturbance in the parking lot of the club. Witness Nga Nguyen saw an acquaintance (Hien Thi) and a man (identified as defendant) yelling at each other in the parking lot. Defendant grabbed a hammer that had been sitting on the hood of Hien Thi's car, but Nguyen took it out of his hand.[2] According to Hien Thi, defendant tried to prevent her from leaving the parking lot and threatened to damage her car if she left. She told Officer Pham that defendant had stalked her in the past and had threatened to kill her and her husband, because he wanted to be romantically involved with her. She said she was afraid of defendant and felt she was in danger. Officer Pham confiscated the hammer, searched defendant for identification when he refused to provide any and warned him not to go back into the club.

Several nights later, on December 21, Officer Pham was called to the apartment of Hien Thi and her husband, Sang Ngoc Tang. The couple had arrived home around 11:30 p.m., parked their car in the back and walked to their apartment. Sang Ngoc Tang was carrying their 18-month old son, Jackson Tang, who was asleep. Suddenly defendant appeared. He looked to Hien Thi, said " 'I apologize,' " and then began chasing Sang Ngoc Tang and the baby. He was wielding a long, 18-inch knife with both hands. Tang fled, running around the swimming pool, and then across the street, yelling, " 'Somebody wants to kill me. Help.' " Defendant fell down; the knife dropped. He picked it up and resumed the chase. Tang was afraid defendant would kill the child if he put him down. Eventually, neighbors[3] coming down the stairs from another apartment saw the chase and told Tang to go in their apartment. They called the police.

According to Hien Thi, she regularly went to the First Club to dine and dance, but her husband did not go.[4] She met defendant there a month or so before the incidents, and she had considered him a friend. She denied being

---

[1]The First Club is a karaoke bar catering primarily to a Vietnamese-speaking clientele.

[2]Nguyen testified at trial that she, Hien Thi and defendant were regulars at the club; that she had sometimes seen Hien Thi and defendant eating dinner together and holding hands. She saw defendant give Hien Thi a ring and some money.

[3]Another neighbor saw Tang being chased by a man carrying a long object, which she assumed was a bat.

[4]Hien Thi insisted she and her husband did not have marital difficulties at the time, although they separated briefly later.

romantically involved with him, or ever receiving a ring or money from him. She might have kissed or held hands with him, but only as a friend in a joking manner. Then he began to threaten to hurt her and her husband and damage her car. She repeatedly told him she did not want to see him, but he would not listen and continued to threaten her. She felt in immediate danger, but did not report his threats to the police, because she feared he would carry them out.

Sometime before the incident in the parking lot at the First Club, defendant had threatened her several times at the club with a knife, which he would throw on the table in front of her and threaten to kill her. He had also smashed the windows of her car on an earlier occasion. Several days after the December 17 incident, she saw defendant sitting in his car outside her apartment. She refused his request to speak to her; the next day her roommate's car window was broken. She said she tried to call the police officer but could not reach him.

Hien Thi explained that she once or twice had her welfare check sent to her friend's address, and defendant lived at the same address. Defendant had also been present once when his foster brother babysat Hien Thi's son Jackson. She admitted that she was driving a borrowed car, but denied that defendant helped her purchase it.

## DISCUSSION

### I

### *Statutory Vagueness*

Defendant first contends Penal Code section 646.9 is, in part, unconstitutionally vague, and thus offends the due process clause of the Constitution.

" 'The requirement of a reasonable degree of certainty in legislation, especially in the criminal law, is a well established element of the guarantee of due process of law. ". . . '[A] statute which either forbids or requires the doing of an act in terms so vague that men of common intelligence must necessarily guess as to its meaning and differ as to its application, violates the first essential of due process of law.' " [Citations.]' " (*People* v. *Mirmirani* (1981) 30 Cal.3d 375, 382 [178 Cal.Rptr. 792, 636 P.2d 1130].) "Among the implications of this constitutional command [of due process of law] is that the state must give its citizenry fair notice of potentially criminal conduct. This requirement has two components: 'due process requires a

statute to be definite enough to provide (1) a standard of conduct for those whose activities are proscribed and (2) a standard for police enforcement and for ascertainment of guilt.' [Citations.]" (*Walker* v. *Superior Court* (1988) 47 Cal.3d 112, 141 [253 Cal.Rptr. 1, 763 P.2d 852].)

Defendant specifically complains that a part of the definition of the term "harasses" in the stalking statute, i.e., the element that the objectionable conduct "serves no legitimate purpose," is unconstitutionally vague and gives the violator no sufficiently definite basis for ascertaining what purposes are "legitimate." We disagree.

Penal Code section 646.9,[5] in pertinent part, provides: "(a) Any person who willfully, maliciously, and repeatedly follows or harasses another person and who makes a credible threat with the intent to place that person in reasonable fear for his or her safety, or the safety of his or her immediate family, is guilty of the crime of stalking . . . ." The term "harasses" is then defined as "a knowing and willful course of conduct directed at a specific person which seriously alarms, annoys, torments, or terrorizes the person, and which serves no legitimate purpose. The course of conduct must be such as would cause a reasonable person to suffer substantial emotional distress, and must actually cause substantial emotional distress to the person. 'Course of conduct' means a pattern of conduct composed of a series of acts over a period of time, however short, evidencing a continuity of purpose. Constitutionally protected activity is not included within the meaning of 'course of conduct.' " (Former Pen. Code, § 646.9, subd. (d).) A "credible threat" is defined as "a verbal or written threat or a threat implied by a pattern of conduct or a combination of verbal or written statements and conduct made with the intent and the apparent ability to carry out the threat so as to cause the person who is the target of the threat to reasonably fear for his or her safety or the safety of his or her immediate family." (Former Pen. Code, § 646.9, subd. (e).)

The Supreme Court has noted that, " 'A statute should be sufficiently certain so that a person may know what is prohibited thereby and what may be done without violating its provisions, but it cannot be held void for uncertainty if any reasonable and practical construction can be given to its language.' [Citation.]" (*Walker* v. *Superior Court, supra*, 47 Cal.3d at p. 143.) The statute must notify an ordinary person what conduct is prohibited in a way that he or she can reasonably understand. " ' "Fair notice" requires only that a violation be described with a " 'reasonable degree of certainty' " . . . so that "ordinary people can understand what conduct is prohibited." ' " (*People* v. *Superior Court* (*Elder*) (1988) 201 Cal.App.3d 1061, 1069 [247

---

[5]We discuss the statute as it existed at the time of the crime.

Cal.Rptr. 647], citation omitted.) Moreover, " '[i]n determining the sufficiency of the notice, a statute must of necessity be examined in the light of the conduct with which the defendant is charged [citation].' " (*People* v. *Martin* (1989) 211 Cal.App.3d 699, 705 [259 Cal.Rptr. 770, 86 A.L.R.4th 383].)

█ Here, defendant suggests that the phrase "serves no legitimate purpose" has no definite meaning and thus allows the jurors to impose their own moral judgment on his actions, which he may have believed had a legitimate purpose, i.e., to convince Hien Thi to leave her husband and pursue a romantic relationship with him. However, he lifts the phrase entirely out of context and attempts to focus on his view of his activities rather than the view of the victim or a reasonable person. The statute prohibits following or harassing a person and making a credible threat with intent to place the person in reasonable fear of personal or family safety. Harassing is willful conduct that seriously alarms, annoys, torments or terrorizes the person and reasonably causes substantial emotional distress. Defendant cannot genuinely question that his acts of threatening Hien Thi with a knife or hammer and chasing her husband and baby while wielding a long knife are prohibited, even if he somehow hopes the acts will persuade Hien Thi to leave her husband.

In *People* v. *Heilman* (1994) 25 Cal.App.4th 391 [30 Cal.Rptr.2d 422], the Fourth District upheld the stalking statute as to a vagueness challenge to the term "repeatedly." (See also *People* v. *McClelland* (1996) 42 Cal.App.4th 144 [49 Cal.Rptr.2d 587] [vagueness challenge to Penal Code section 646.9, subdivision (b), providing that when the proscribed behavior is the subject of a restraining order, the crime is a felony, is rejected].) Nearly identical stalking statutes in other states have been upheld in the face of unconstitutional vagueness challenges: *Pallas* v. *State* (Fla.Dist.Ct.App. 1994) 636 So.2d 1358, 1361 (approved by *Pallas* v. *State* (Fla. 1995) 654 So.2d 127) and *State* v. *Culmo* (1993) 43 Conn.Super.Ct. 46 [642 A.2d 90, 96-100].

This case is not like *Pryor* v. *Municipal Court* (1979) 25 Cal.3d 238 [158 Cal.Rptr. 330, 599 P.2d 636], wherein the Supreme Court held the general terms "lewd" or "dissolute" in describing prohibited conduct were vague on their face, as construed by past judicial decisions. Moreover, in *Pryor*, the court adopted a limited and specific construction of the phrases and as so construed, found them constitutional. (*Id.* at p. 244.)

Penal Code section 646.9 prohibits certain, described conduct and requires that the prohibited conduct be done willfully. An ordinary person can reasonably understand what conduct is expressly prohibited. Any ulterior desire by defendant cannot excuse his commission of the prohibited acts.

## II

### *Assault With a Deadly Weapon on Jackson Tang*

██ Defendant next argues the evidence was insufficient to support his conviction of an assault with a deadly weapon on Jackson Tang, the baby son Sang Ngoc Tang was holding when defendant chased him with the knife. Defendant maintains that no evidence showed a specific intent to injure Jackson, the doctrine of transferred intent does not apply, and the jury instructions did not adequately inform the jury of its duty to find a specific intent to injure Jackson. We disagree.

██ As defendant points out: " 'An assault is an attempt to commit a battery. . . . Assault with a deadly weapon is termed a "general intent" crime because it is not necessary to find a specific intent to cause a particular injury. What is required, however, is the general intent to willfully commit a battery, an act which has the direct, natural and probable consequences, if successfully completed, of causing injury to another. . . . Intent to frighten or mere reckless conduct is insufficient. . . .' . . . 'All that is required to sustain a conviction of assault with a deadly weapon is proof that there was an assault, that it was with a deadly weapon, and that the defendant intended to commit a violent injury on another.' " (*People* v. *Lee* (1994) 28 Cal.App.4th 1724, 1734 [34 Cal.Rptr.2d 723], citations omitted.)

In *People* v. *Colantuono* (1994) 7 Cal.4th 206, 214-215 [26 Cal.Rptr.2d 908, 865 P.2d 704], the Supreme Court explained the mental state for assault: "The mens rea is established upon proof the defendant willfully committed an act that by its nature will probably and directly result in injury to another, i.e., a battery. Although the defendant must intentionally engage in conduct that will likely produce injurious consequences, the prosecution need not prove a specific intent to inflict a particular harm. (Cf. Pen. Code, § 7, subd. 1 [' "willfully," when applied to the intent with which an act is done or omitted, implies simply a purpose or willingness to commit the act, or make the omission referred to'].) The evidence must only demonstrate that the defendant willfully or purposefully attempted a 'violent injury' or 'the least touching,' i.e., 'any wrongful act committed by means of physical force against the person of another.' [Citations.] In other words, '[t]he use of the described force is what counts, not the intent with which same is employed.' [Citation.] Because the offensive or dangerous character of the defendant's conduct, by virtue of its nature, contemplates such injury, a general criminal intent to commit the act suffices to establish the requisite mental state. [Citations.]"

██ Here, defendant's act of chasing Sang Ngoc Tang and the baby and threatening them with a long knife demonstrates a willful attempt to use

physical force against the victims he was pursuing. It is of no merit to insist that he really intended no harm to the baby.

The *Lee* court further explained: "Under *Colantuono* and [*People* v.] *Rocha* [(1971) 3 Cal.3d 893 (92 Cal.Rptr. 172, 479 P.2d 372)], a defendant need not intend to strike any particular person to be guilty of an assault, and it is therefore irrelevant whether the defendant strikes his intended victim or another person." (*People* v. *Lee, supra,* 28 Cal.App.4th at p. 1737.) This comment was made in the context of rejecting the application of the doctrine of transferred intent, and on appeal, the parties agree that such doctrine does not apply in the case of an assault. However, defendant attempts to limit this language in *Lee* and *Colantuono* as applying only to assaults with firearms. We do not read the cases as so limited. In fact, *People* v. *Rocha* (1971) 3 Cal.3d 893 [92 Cal.Rptr. 172, 479 P.2d 372] concerned a knife attack. (See also *People* v. *Martinez* (1977) 75 Cal.App.3d 859 [142 Cal.Rptr. 515] [throwing beer bottle], cited in *Lee*.) We decline to conclude that chasing two people while wielding a long knife is any less dangerous an act than threatening them with a firearm.

We read *Colantuono* to mean that an intent to do an act which will injure any reasonably foreseeable person is a sufficient intent for an assault charge. Defendant need not have specifically intended to injure baby Jackson; chasing Sang Ngoc Tang (who was carrying Jackson) and wielding a large knife conveyed an intent to cause injury with the knife. It is not reasonable to insist that defendant desired only to injure the father, and thus was not liable for an assault on the son. Surely a knife attack on the father could foreseeably have wounded the baby.

Defendant also objects that the jury instruction on assault did not convey the intent required for an assault on Jackson Tang.[6] But that instruction stated, in relevant part, that the prosecution must prove: "A person willfully committed an act that by its nature would probably and directly result in the application of physical force on another person," with "willfully" being further defined as "the person committing the act did so intentionally." The court also instructed the jury on the general intent requirement. We find no error.

### III

#### CALJIC No. 2.90

■  Finally, defendant asserts the trial court erred by instructing the jury with CALJIC No. 2.90 (5th ed. 1995 Supp.), the 1994 revision of the

---

[6]At trial, defendant requested the jury be instructed instead with the language of Penal Code section 240, defining assault.

reasonable doubt instruction.[7] Defendant complains that by eliminating the phrase requiring an abiding conviction "to a moral certainty," the trial court improperly lowered the burden of proof to a standard equivalent to the standard of clear and convincing evidence. He insists that the phrase concerning moral certainty is necessary to due process. We disagree.

In 1994, CALJIC No. 2.90 was revised to delete the phrases " 'and depending on moral evidence' " and " 'to a moral certainty' " in response to a suggestion by the California Supreme Court in *People* v. *Freeman* (1994) 8 Cal.4th 450, 504-505 [34 Cal.Rptr.2d 558, 882 P.2d 249]. Our Supreme Court was similarly responding to concerns of the United States Supreme Court, as explained in *Victor* v. *Nebraska* (1994) 511 U.S. 1, __ [127 L.Ed.2d 583, 596-597, 114 S.Ct. 1239, 1248]). As the California court explained, "[m]aking these changes [deleting the phrases using the terms moral evidence and moral certainty], and no others, would both avoid the perils that have caused appellate courts to caution trial courts against modifying the standard instruction, and satisfy the concerns the high court has expressed regarding that instruction." (*People* v. *Freeman*, *supra*, 8 Cal.4th at p. 504.)

Moreover, we believe that in the context of the complete instruction, the use of the phrase "abiding conviction," as a conviction which will last over time, adequately encompasses the appropriate depth or intensity of the jury's certainty and satisfies the requirements of due process.

### DISPOSITION

The judgment is affirmed.

Premo, Acting P. J., and Elia, J., concurred.

A petition for a rehearing was denied August 7, 1996, and the opinion was modified to read as printed above. Appellant's petition for review by the Supreme Court was denied October 16, 1996.

---

[7]We note that Penal Code section 1096 has now been amended to reflect this change.