[No. D023600. Fourth Dist., Div. One. Sept. 3, 1996.]

THE PEOPLE, Plaintiff and Respondent, v.
EARL ACHILLES HALGREN, Defendant and Appellant.

**COUNSEL**

Melody Harris, under appointment by the Court of Appeal, for Defendant and Appellant.

Daniel E. Lungren, Attorney General, George Williamson, Chief Assistant Attorney General, Gary W. Schons, Assistant Attorney General, Robert M. Foster and Joyce N. Burnett, Deputy Attorneys General, for Plaintiff and Respondent.

**OPINION**

**WORK, J.**—Earl Achilles Halgren appeals a judgment convicting him of felony stalking (Pen. Code,[1] § 646.9). The trial court granted Halgren five years' probation with credit for time served. He challenges the constitutionality of the statute, arguing it is vague, overbroad and unconstitutional as applied to him. He also contends there was insufficient evidence of a credible threat to justify a conviction. We affirm the judgment.

### FACTUAL AND PROCEDURAL BACKGROUND

Melissa Gonzales met Halgren at a grocery store on September 9, 1994. He asked her if he could practice his Spanish with her. During their conversation he learned where she worked and that she was divorced. She showed him a picture of her child. She refused his invitation to have lunch.

The next day, Halgren telephoned Gonzales at the office where she worked as a receptionist and asked her to lunch. She refused, telling him she had a boyfriend. During their conversation she said she came from Killeen, Texas.

The following day he telephoned again and asked her to lunch. She said she was going grocery shopping during her lunch hour because that evening she planned to cook dinner for her boyfriend. She told him he could come along on the shopping trip, but did not expect he would. At noon he arrived

---

[1]All statutory references are to the Penal Code.

at her office. She refused his invitation to ride in his car, but said he could follow her.

At the market Halgren attempted to take Gonzales's shopping list; she said she could do it herself. She thought he seemed jittery. She found him annoying and told him he talked too fast and looked bowlegged. These comments did not discourage Halgren, and he ran down the aisle slapping his calves with his boots. Gonzales told him he was acting strangely. He followed her through the check stand and outside, where he offered to help with her bags. When she refused, he pulled a badge from his pocket. She asked if he were a police officer, and he replied, "All you need to know is that I'm really important." Upon her return to her office, she told the other receptionist, Lorena Torres, about her experience.

Gonzales did not hear from Halgren again until October 26, when he called her office and asked if he were speaking to Miss Killeen, Texas. Gonzales hung up. He called her several times that day and she and Torres began keeping a log of his calls. When Torres answered she thought Halgren sounded angry that she was trying to protect Gonzales. During one call Halgren demanded to speak to the manager, who told him to stop calling because he had no business with the company. During his last call that day, Halgren told Gonzales he only wanted talk to her. She told him to leave her alone, she had called police and a telephone trap would be set.

When Gonzales arrived home that evening, there was a message from Halgren on her answering machine. It stated: "Hi, Melissa, this is [Halgren]. I don't know why you are being so rude to me and such a bitch. You are fat and ugly and repulsive. You make me want to vomit. So you are going to have to talk to me sometime."[2]

A short time later, Gonzales was talking on her telephone with a friend when she heard a clicking sound indicating she had an incoming call. She switched to the other line and heard Halgren say, "So, are you ready to talk to me now?" She switched back to the first call and tried to ignore further clicks, but there were so many she and her friend could not continue their conversation. She answered the other line and heard Halgren say, "You are going to have to talk to me." She yelled, "I want you to leave me the fuck alone. I don't know you. I don't want to know you. Stop calling me." Halgren yelled back, "Bitch, you don't know who you are fucking with. I am going to call you whenever the fuck I want to, and I am going to do to you whatever the fuck I want to." Gonzales testified she was terrified for herself

---

[2]The investigating officer testified Gonzales told him Halgren said on the message he had not told her she was fat and made him want to vomit, but he just wanted to be her friend.

and her son. She unplugged her telephone and the next morning changed her telephone number to an unlisted one and notified her son's preschool about the harassment.

On October 28, Gonzales stayed home from work. That day several of her coworkers saw Halgren pacing around their office. Police were notified.

Each day from October 29 until November 8 there were a total of 25 to 30 hang-up calls and calls from Halgren to Gonzales's office. On November 2, he called and said, "God, I've missed you. You look great today in black." She was wearing black that day. During another call he told her she would be sorry she had been so rude to him.

On November 8, Gonzales's coworkers saw Halgren outside their office building. The police were called. Halgren telephoned Gonzales and she attempted to keep him on the line. He said, "All I want to do is be close to you. I don't understand your rudeness. Why won't you talk to me? You are going to have to talk to me sometime." He said he was not going to let her be rude to him and either "I'm going to fix you" or "I'm going to fix this."

Police located the telephone booth from where Halgren had called Gonzales. When he saw them walking toward him, he said, "I'm not a stalker or anything," and hung up. After Halgren's arrest, police found two knives, a small holster, and a rotating light beacon inside his car and a Swiss army knife and a badge in his pocket.

*Defense case*

Frank Gregory Jennings testified he and Halgren met Gonzales and her son at a Mission Valley mall, where they had gone to pass out business cards advertising Halgren's services as a stripper for parties. Jennings said Halgren sometimes wore a police uniform costume when he performed.

Police Officer Craig Myrom testified he took reports of some of Halgren's calls. He stated based on conversations with Gonzales he considered the case an annoying phone call case, not a stalking case.

Halgren's girlfriend, Jean Malana, testified Halgren sometimes wore a police uniform and badge and used the other police-related items in his car when he performed as a stripper.

## DISCUSSION

### Section 646.9 Is Not Unconstitutionally Vague or Overbroad

Section 646.9, subdivision (a) states in pertinent part: "Any person who willfully, maliciously, and repeatedly follows or harasses another person and

who makes a credible threat with the intent to place that person in reasonable fear for his or her safety, or the safety of his or her immediate family, is guilty of the crime of stalking . . . ."

At the time Halgren was charged in 1994, section 646.9, subdivision (e) defined credible threat within the meaning of the statute as "a verbal or written threat or a threat implied by a pattern of conduct or a combination of verbal or written statements and conduct made with the intent and the apparent ability to carry out the threat so as to cause the person who is the target of the threat to reasonably fear for his or her safety or the safety of his or her immediate family."

Halgren challenges the constitutionality of section 646.9, contending the definition of "credible threat" contained therein is vague and overbroad. He argues a mere harmless expression of anger or disappointment could fall within its provisions, subjecting the speaker to criminal punishment. He also claims the statute is unconstitutionally overbroad because it is not narrowly directed to only unequivocal threats which pose a danger to society.

Previous constitutional challenges to language in section 646.9 have failed. In *People* v. *Heilman* (1994) 25 Cal.App.4th 391 [30 Cal.Rptr.2d 422] this court upheld the statute against a challenge that the term "repeatedly" was unconstitutionally vague within the context of section 646.9. The court in *People* v. *McClelland* (1996) 42 Cal.App.4th 144 [49 Cal.Rptr.2d 587] rejected a vagueness challenge to subdivision (b), which provides the proscribed behavior is a felony when it is the subject of a restraining order. In *People* v. *Tran* (1996) 47 Cal.App.4th 253 [54 Cal.Rptr.2d 650], the court determined an element of the definition of harasses, that the conduct serves no legitimate purpose, is not unconstitutionally vague.

■ To determine the constitutionality of a statute challenged on the basis of vagueness, we follow well-established standards. " 'Due process "requires a statute to be definite enough to provide (1) a standard of conduct for those whose activities are proscribed and (2) a standard for police enforcement and for ascertainment of guilt. [Citations.]" [Citation.]' " (*People* v. *Heilman, supra,* 25 Cal.App.4th at p. 400, quoting *People* v. *Martin* (1989) 211 Cal.App.3d 699, 705 [259 Cal.Rptr. 770, 86 A.L.R.4th 383].) " ' "A statute should be sufficiently certain so that a person may know what is prohibited thereby and what may be done without violating its provisions, but it cannot be held void for uncertainty if any reasonable and practical construction can be given to its language." ' " (*People* v. *Heilman, supra,* at p. 400, quoting *Walker* v. *Superior Court* (1988) 47 Cal.3d 112, 143 [253 Cal.Rptr. 1, 763 P.2d 852].) " ' " 'Fair notice' requires only that a violation

be described with a ' "reasonable degree of certainty" ' . . . so that 'ordinary people can understand what conduct is prohibited.' " ' " (*People* v. *Tran, supra,* 47 Cal.App.4th at p. 259, quoting *People* v. *Superior Court (Elder)* (1988) 201 Cal.App.3d 1061, 1069 [247 Cal.Rptr. 647].)

The term, credible threat, in the context of section 646.9 is not unconstitutionally vague. The first antistalking criminal statute in the United States, section 646.9 was enacted in 1990 as a response to murders of a well-known actress and four other women. (*People* v. *Carron* (1995) 37 Cal.App.4th 1230, 1237 [44 Cal.Rptr.2d 328].) Each of the four women had obtained a restraining order and communicated the fear she would be killed. The murders demonstrated existing statutes, restraining orders, and requests for police help had been inadequate to save the lives of the four women. (*Ibid.*)

In the initial version of section 646.9, credible threat was defined as "a threat made with the intent and the apparent ability to carry out the threat so as to cause the person who is the target of the threat to reasonably fear for his or her safety. The threat must be against the life of, or a threat to cause great bodily injury to, a person as defined in Section 12022.7." (Stats. 1990, ch. 1527, § 1, p. 7144.)

In 1992 section 646.9 was amended. Among the changes, credible threat was expanded to include threats to immediate family. Also, punishment for second offenders was increased. (Stats. 1992, ch. 627, § 1; *People* v. *Carron, supra,* 37 Cal.App.4th at p. 1239.)

The statute was amended again in 1993. (Stats. 1993, ch. 581, § 1.) In this version credible threat was further defined as a threat made verbally, or in writing, or implied by a pattern of conduct, or a combination of verbal or written statements and conduct. Also, the intent requirement was modified by replacing threats of death and great bodily injury with threats intended to place a person in reasonable fear for his or her safety or the safety of his or her immediate family. Further, punishment was increased and the meaning of immediate family was expanded. (Stats. 1993, ch. 581, § 1; *People* v. *Carron, supra,* 37 Cal.App.4th at p. 1239.)

■ Section 646.9 provides sufficient notice of the conduct prohibited. The definition of credible threat is not impermissibly vague. It may be either implied by a pattern of conduct or it may be verbal or written statements or conduct made with the intent and the apparent ability to carry out the threat

so as to cause the person who is the target of the threat to reasonably fear for personal safety or the safety of immediate family. To meet the statutory definition the threat must be made with the specific intent to cause the victim to reasonably fear for personal safety or the safety of immediate family. "[I]t is clear that it is the perpetrator's intent, rather than the definition of the conduct engaged in, which triggers the applicability of the statute." (*People v. Heilman, supra,* 25 Cal.App.4th at p. 401.) "The intent element of section 646.9 ensures law enforcement officials do not have boundless discretion in defining the crime." (*Ibid.*)

Halgren takes the term "credible threat" out of context, arguing a threat which may be only "implied by a pattern of conduct" under the definition in the statute is open to interpretation and could include harmless speech meant merely to communicate ideas or emotions. He, however, has ignored the other elements which must be present to trigger the statute's provisions: (1) The credible threat was made with the intent and apparent ability to carry it out so as to cause the target to reasonably fear for personal safety or the safety of immediate family; and (2) the threat was made in combination with willful, malicious and repeated following or harassing of the target. The making of the credible threat alone is not punishable; a mere expression of anger or emotion does not fall within the provisions of the statute. The statute provides notice a person is guilty of a felony if he or she willfully, maliciously, and repeatedly follows or harasses another person and also makes a credible threat with the intent to place the victim in reasonable fear for personal safety or the safety of immediate family members.

■ Nor is section 646.9 overbroad. A challenge to a statute on the basis of overbreadth must demonstrate it inhibits a substantial amount of protected speech. (*In re M.S.* (1995) 10 Cal.4th 698, 710 [42 Cal.Rptr.2d 355, 896 P.2d 1365].) " '[O]verbreadth . . . must not only be real, but substantial as well, judged in relation to the statute's plainly legitimate sweep.' " (*Ibid.,* quoting *Broadrick* v. *Oklahoma* (1973) 413 U.S. 601, 615 [93 S.Ct. 2908, 2917-2918, 37 L.Ed.2d 830].)

Section 646.9 does not punish mere angry or emotional speech. It applies only when there has been a credible threat made with an intent to instill fear for personal safety or the safety of immediate family. This speech is not afforded the protection of the First Amendment. (*In re M.S., supra,* 10 Cal.4th at pp. 710-711.) Section 646.9 is sufficiently narrowly tailored to survive constitutional scrutiny.

*Section 646.9 Is Constitutional as Applied to Halgren*

■ Halgren asserts section 646.9 is unconstitutional as applied to him. He argues during his calls to Gonzales he was merely expressing anger and

frustration because she would not talk with him. He claims his statements were equivocal and vague, did not express a serious intention of inflicting bodily harm, and had First Amendment protection.

During one telephone call Halgren told Gonzales she would be sorry she had been rude to him. On the day of his arrest he telephoned her and, when he suspected she was trying to keep him on the line, told her he would not let her be rude, she would pay for being rude to him and either he was going to "fix her" or "fix this." When placed in context with a series of phone calls including one in which Halgren threatened Gonzales with a statement he could do whatever he wanted to her, these statements constituted a credible threat made with the intent to place her in reasonable fear for her safety.[3]

*Substantial Evidence of a Credible Threat Supports the Conviction*

█ Halgren contends his conviction is not supported by substantial . evidence because his statements to Gonzales, viewed objectively, were not credible threats. He argues he never threatened her or her child with physical harm.

█ In reviewing the record to determine whether a verdict is supported by the evidence, an appellate court "must review the whole record in the light most favorable to the judgment below to determine whether it discloses substantial evidence—that is, evidence which is reasonable, credible, and of solid value—such that a reasonable trier of fact could find the defendant guilty beyond a reasonable doubt." (*People* v. *Johnson* (1980) 26 Cal.3d 557, 578 [162 Cal.Rptr. 431, 606 P.2d 738, 16 A.L.R.4th 1255].) Review is not limited to the evidence supporting the respondent, however. The court must look at the whole record and determine whether evidence of each essential element is substantial. (*Id.* at p. 577.) "The reviewing court presumes in support of the judgment the existence of every fact the jury could reasonably deduce from the evidence." (*People* v. *Bloom* (1989) 48 Cal.3d 1194, 1208 [259 Cal.Rptr. 669, 774 P.2d 698].)

---

[3]The record does not support Halgren's argument that comments made by the trial judge show his statements to Gonzales should be considered "exceedingly vague" and "not terror-inspiring." When the judge used these terms at the sentencing hearing, he was comparing Halgren's threats to those made by the defendant in *People* v. *Heilman, supra*, 25 Cal.App.4th 391. The judge indicated the jury's determination of Halgren's guilt under the statute was valid, but compared to the conduct of the defendant in *Heilman*, his behavior "was in fact exceedingly vague, explicitly vague in words, and certainly lacked from an outside observer's point of view the severe terror-inspiring quality that might be demonstrated in other instances of the same crime. [¶] I'm not meaning in any way to—to make less of what [Gonzales] herself experienced or the reasonableness of her own reaction. . . ."

These comments do not show the judge believed Halgren's threats to Gonzales were too vague to be punished under section 646.9, but only support his decision to grant probation.

 Sufficient evidence supports the judgment. Halgren repeatedly telephoned Gonzales, insisting she speak with him after she had clearly explained she was not interested. He left a message on her home telephone and demanded she talk with him there. He told her she would be sorry she had been so rude. He appeared at her office when she was not there, positioning himself where he could watch people leave the building. On the day he was arrested he told her she would pay for her rudeness and he would "fix her" or "fix this." These statements were a credible threat with a clear intent to place her in fear for her safety. Coupled with the repeated harassing telephone calls, they constitute substantial evidence which support his conviction of felony stalking.

DISPOSITION

The judgment is affirmed.

Kremer, P. J., and Pate, J.,* concurred.

---

*Judge of the San Diego Superior Court, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.