Filed 8/6/14  P. v. Meneses CA5

### NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## FIFTH APPELLATE DISTRICT

| | |
|---|---|
| THE PEOPLE,<br><br>　　Plaintiff and Respondent,<br><br>　　　v.<br><br>JEFFERY PEREIRA MENESES,<br><br>　　Defendant and Appellant. | F066672<br><br>(Super. Ct. Nos. CRM017867,<br>CRM019510)<br><br>**OPINION** |

APPEAL from a judgment of the Superior Court of Merced County.  Marc A. Garcia and Ronald W. Hansen, Judges.[*]

John F. Schuck, under appointment by the Court of Appeal, for Defendant and Appellant.

Kamala D. Harris, Attorney General, Dane R. Gillette, Chief Assistant Attorney General, Michael P. Farrell, Assistant Attorney General, Daniel B. Bernstein and Tia M. Coronado, Deputy Attorneys General, for Plaintiff and Respondent.

---

[*]　　Judge Garcia presided at respondent's motion to consolidate; Judge Hansen presided at appellant's trial and sentencing.

-ooOoo-

**INTRODUCTION**

Appellant Jeffery Pereira Meneses was convicted after jury trial of making criminal threats, stalking, vandalism, resisting an officer, evading an officer and throwing a substance at a vehicle; two out-on-bail enhancements were found true. (Pen. Code, §§ 422, 646.9, subd. (a), 594, subd. (b)(1), 148, subd. (a)(1) (misdemeanor), 12022.1, subd. (b); Veh. Code, §§ 2800.2, subd. (a), 23110, subd. (b).)[1] He was sentenced to an aggregate term of four years eight months imprisonment.

Appellant argues that the trial court abused its discretion by granting the prosecution's consolidation motion. He also contends there is insufficient evidence to support the criminal threats and stalking counts. Neither contention is persuasive. The judgment will be affirmed.

**FACTS**

**I.     Prosecution Evidence.**

Monique Short testified that beginning around 2007 she had a three-year romantic relationship with appellant and they had a child together. They frequently argued and were each arrested for domestic violence. After the relationship ended, they remained in contact to coparent their child. Short began communicating with and dating other men. She and Joshua Rouse interacted on social media websites. During March or April of 2011, Short began dating Tyler Cico and, by June, they were living together. Appellant was hurt, angry and jealous. He did not want Short to talk to or date other men.

Rouse testified that he and Short grew up together and kept in contact through social networking websites. Rouse did not know appellant. On May 7, 2011, Rouse was inside a liquor store when a man, who Rouse identified at trial as appellant, approached

---

[1]     Unless otherwise specified all statutory references are to the Penal Code.

2.

him. Appellant's demeanor was hostile. He said something to Rouse but he does not recall what appellant said to him. Appellant left the store. The store clerk told Rouse that appellant kicked Rouse's truck. Rouse immediately went outside and saw appellant and another person drive away in a green SUV. Rouse followed the SUV so he could read the vehicle's license plate. The SUV pulled over to the side of the road and appellant got out of the passenger side. He was holding an object that was later determined to be a scissor jack. Rouse slowly drove past the SUV. Appellant threw the scissor jack at Rouse's truck. It hit the truck's back window, shattering it.

Rouse called the police. Merced Deputy Sheriff Mark Taylor responded to the scene and took a statement from Rouse. Deputy Taylor found a scissor jack in the bed of Rouse's truck. The scissor jack and photographs of Rouse's damaged truck were admitted into evidence.

Deputy Taylor spoke with appellant about this incident. Appellant admitted that he kicked the driver's side door of Rouse's truck. Appellant did not admit causing any other damage.

On or about June 1, 2011, Diane Selph, who is Short's mother, contacted Deputy Taylor and reported that "there was [a] problem" between appellant and Short but Short was not willing to report it to the police.

On June 4, 2011, Deputy Taylor spoke with Short. Short said that appellant was verbally threatening Cico and her. Short reported that appellant said "he had known a guy that had gotten four years for killing his girlfriend." Appellant also said, "I hope you love him because I'm going to kill him," and "that he was going to jail." Deputy Taylor obtained an emergency protective order for Short.

Cico testified that he and Short lived together during June of 2011. On the evening of June 14, 2011, they heard a loud noise and Cico went into the living room to investigate. The front door was cracked open and a man was standing on the other side

3.

of the door. Cico pulled the door open and appellant hit him on the head with a bar or a bat. Appellant swung the bludgeon again and Cico put his arm up to block the blow. Appellant struck Cico on the arm, shattering his elbow. Cico had two surgeries to repair the damage to his elbow.

Short called 911 and City of Turlock Police Officer Gerardo Higareda responded to the call. Officer Higareda testified that Short told him "that her ex-boyfriend had entered their apartment, kicked in the door and assaulted her then new boyfriend" with a metal pipe or baton.[2] Officer Higareda created a photographic lineup and Short selected appellant's photograph.

On September 3, 2011, appellant and Short sent several text messages to each other. Cico testified that Short shared the content of these text messages with him and told him to "watch [his] back" because appellant was "threatening [his] life pretty much." Cico also testified that Short told him that appellant texted "if I didn't leave her alone that he was going to take care of me." Cico understood these texts as meaning that appellant would attack or kill him. Cico was scared and watchful. He believed appellant was capable of carrying out his threat.

Around 5:30 a.m. the following morning, appellant called Selph and she told him not to call her again.[3] Appellant called her a name and hung up. A few minutes later, Selph heard the sound of screeching tires. She looked outside and saw a pickup truck make several circles in the roadway and then drive away. Selph went outside and noticed that the back window of Cico's pickup truck, which was parked in the driveway, was broken.

---

[2] At trial, Short testified that she did not recall an incident during which appellant hit Cico with a bar or pipe and denied telling a police officer that appellant hit Cico.

[3] Short and Cico were living with Selph. Selph and Short shared a cell phone.

Merced County Sheriff's Deputy Adam Leuchner was dispatched to Selph's residence. Deputy Leuchner noticed a pickup truck stopped in a parking lot that was next to Selph's residence. A person, later identified as appellant, was sitting in the driver's seat. Appellant looked at Deputy Leuchner and quickly accelerated out of the parking lot and onto the street. Deputy Leuchner followed appellant. Appellant sped up to 70 miles an hour as he traveled around the neighborhood four or five times with Deputy Leuchner in pursuit.

Appellant eventually returned to Selph's residence. He got out of his vehicle holding a wooden baseball bat. He ran to Cico's pickup truck and repeatedly struck it with the bat until the bat finally broke.[4] Appellant ignored Deputy Leuchner's commands to put down the bat and surrender. The deputy ultimately used his tazer gun to take appellant into custody. The deputy seized two cell phones that were on appellant's person.

Deputy Leuchner testified that he spoke with Short, Selph and Cico at the scene. Short told him that appellant had been sending her text messages and showed them to him. Deputy Leuchner remembered seeing a text message reading, "I hate you," another message reading, "I'm going to jail" and third message reading, "He's dead now." Short also told him that she saw appellant in different locations when she was out with Cico.[5]

Deputy Taylor testified that he called Short on September 6, 2011, to conduct a follow-up interview. Short told him that appellant threatened Cico a few hours before he

---

**4**     Cico paid approximately $800 to repair the damage to his truck.

**5**     At trial, Short acknowledged that appellant sent her text messages but denied that they contained any threatening statements. Short denied telling Cico that appellant threatened him. She denied talking to Deputy Leuchner about appellant's threats and denied showing the deputy any text messages.

damaged Cico's truck on September 4th. Appellant said to Short: "I'm going to jail for five years. I don't care. He's dead this time."[6]

A cell phone expert testified one of the cell phones found in appellant's truck sent a text reading "I'm going to jail."

## II. Defense Witness.

Joey Garcia was the only defense witness. He testified that on May 7, 2011, his girlfriend, appellant and he drove to a liquor store in a green Jeep Cherokee. His girlfriend was the driver.[7] Appellant and he went inside the liquor store. Garcia did not see appellant damage a vehicle in the parking lot. A pickup truck followed the Jeep as it left the liquor store. The truck tailgated the Jeep so Garcia's girlfriend pulled over. Garcia did not think that anyone got out of the Jeep. The pickup truck passed the Jeep. As it drove by, the driver "screamed something and then he took off."

## DISCUSSION

## I. The Two Cases Were Properly Consolidated.

### A. Facts.

Two separate criminal cases were filed in this matter.

County of Merced case No. CRM017867 (case No. CRM017867) pertains to the incident on May 7th during which appellant damaged Rouse's truck. A two-count information was filed charging appellant with assault with a deadly weapon and throwing an object capable of doing serious bodily harm at a vehicle on a highway. (Pen. Code, § 245, subd. (a)(1); Veh. Code, § 23110, subd. (b).)

---

**6** Deputy Taylor thought Short was being uncooperative during the interview and asked her to "tell me what's going on." Short said that "she didn't want to help put the father of her child in jail."

**7** Garcia told a defense investigator that he was driving the SUV.

6.

County of Merced case No. CRM019510 pertains to appellant's actions on September 3 and 4, 2011.[8]  A five-count information was filed charging appellant with making criminal threats (§ 422; count 1), stalking (§ 646.9, subd. (a); count 2), evading an officer (Veh. Code, § 2800.2, subd. (a); count 3), vandalism (Pen. Code, § 594, subd. (b)(1); count 4), and resisting an officer (§ 148, subd. (a)(1); count 5).  Two on-bail enhancements were alleged.

The prosecutor filed a motion to consolidate the two pending cases, which appellant opposed.  The motion was heard on February 10, 2012.

The prosecutor argued the cases should be consolidated because the evidence is cross-admissible.  Also, in each case appellant acted violently towards a man who was involved with Shore.

Defense counsel argued that consolidation would be prejudicial because it joins a strong case with a weak one.  He asserted that case No. CRM017867, which pertains to victim Rouse, is a strong case for the defense "because the complaining witness wants to drop charges.  We are disputing what actually happened, and it is not as serious a case as the other one."  He contended that consolidation might mislead the jury into convicting appellant in both cases instead of acquitting him of the charge in case No. CRM017867.

The trial court granted the consolidation motion.  It reasoned that Shore was a "common thread running through" both cases.  Also,

> "I think as far as the weak case being joined with the strong case, I appreciate the defendant's position and statements, but if you look at the nature of the charges, the acts that have been described, I think as far as those go to the Court has no real fear on that particular issue.  I don't think it's based on the offer of proof that that's what would be current.  I think

---

**8**     There is no explanation in the record why appellant was not prosecuted for attacking Cico on June 14th and shattering his elbow.  Evidence about this incident was admitted at trial as a prior uncharged act.  (Evid. Code, § 1101, subd. (b).)

the common thread as I've described is certainly sufficient enough where the Court wouldn't have -- at least based on the standards set forth in the case law suggest that would be unduly confusing to a jury, confusing the issues."

The court subsequently granted the prosecutor's motion to dismiss count 1 in case No. CRM017867. The remaining charge in that case was renumbered as count 1 and the five charges in case No. CRM019510 were renumbered as counts 2 through 6.

**B.      Consolidation was not an abuse of discretion and did not infringe any of appellant's constitutional rights.**

Consolidation of cases is governed by "section 954, which provides in relevant part: 'An accusatory pleading may charge ... two or more different offenses of the same class of crimes or offenses, under separate counts, and if two or more accusatory pleadings are filed in such cases in the same court, the court may order them to be consolidated....'" (*People v. Ochoa* (1998) 19 Cal.4th 353, 408.)  Consolidation is favored by the law because it promotes efficiency and avoids the waste of public funds that would result if the same general facts were tried in two or more separate trials. (*Id*. at pp. 408-409.)  When the requirements for consolidation are met the accused can prevent consolidation only with a clear showing of prejudice.  (*Id*. at p. 409.)  The trial court's ruling is reviewed under the deferential abuse of discretion standard.  (*Id*. at p. 408.)

> "In determining whether there was an abuse of discretion, we examine the record before the trial court at the time of its ruling.  [Citation.]  The factors to be considered are these:  (1) the cross-admissibility of the evidence in separate trials; (2) whether some of the charges are likely to unusually inflame the jury against the defendant; (3) whether a weak case has been joined with a strong case or another weak case so that the total evidence may alter the outcome of some or all of the charges; and (4) whether one of the charges is a capital offense, or the joinder of the charges converts the matter into a capital case." (*People v. Mendoza* (2000) 24 Cal.4th 130, 161.)

Appellant contends that consolidation was an abuse of discretion because the charges involved in the two cases were not of the same class of crimes and the evidence

8.

in the two cases was not cross-admissible.  He also claims that evidence pertaining to victim Cico was both highly inflammatory and weak.  None of these contentions is persuasive.

The crimes charged in the two cases are of the same class.  Offenses are of the same class of crimes if they possess common characteristics or attributes.  (*People v. Koontz* (2002) 27 Cal.4th 1041, 1075.)  Appellant was charged in the case involving victim Rouse with violating Vehicle Code section 23110, subdivision (b), which punishes "[a]ny person who with intent to do great bodily injury maliciously and willfully throws or projects any rock ... at [a] vehicle or occupant thereof ...."  (Veh. Code, § 23110, subd. (b).)  This offense requires proof that the accused intended to injure another.  (*People v. Spence* (1970) 3 Cal.App.3d 599, 602-603.)   Appellant was charged in case No. CRM019510 involving victim Cico with, inter alia, making criminal threats and stalking. (Pen. Code, §§ 422, subd. (a) & 646.9, subd. (a).)  The crime of stalking requires a specific intent to cause the target of the threat to reasonably fear for his personal safety or the safety of a family member.  (*People v. Halgren* (1996) 52 Cal.App.4th 1223, 1230-1231.)  The criminal threat statute requires the defendant to the intended statement to have been understood as a threat.  (*People v. Fierro* (2010) 180 Cal.App.4th 1342, 1347-1348.)  These three crimes require a similar intent or state of mind and, therefore, are of the same class.

The two cases are also connected together in their commission.  Offenses are connected in their commission if they share a common matter of substantial importance. *(People v. Mendoza, supra,* 24 Cal.4th at p. 160.)  This includes the accused's motive for the various crimes.  (*Alcala v. Superior Court* (2008) 43 Cal.4th 1205, 1219.)  Here, appellant's motive in both cases was the same.  Appellant was angered by Short's involvement with other men.  He intimidated, terrorized and bullied Rouse and Cico because of their relationships with her.

Much of the evidence in the two cases would be cross-admissible under Evidence Code section 1101, subdivision (b) to prove appellant's intent or motive. "Motive is always relevant in a criminal prosecution." (*People v. Perez* (1974) 42 Cal.App.3d 760, 767.) "Motive is an intermediate fact which may be probative of such ultimate issues as intent [citation], identity [citation], or commission of the criminal act itself [citation.]" (*People v. Scheer* (1998) 68 Cal.App.4th 1009, 1017-1018.) Here, in each case the victim was either communicating with or dating Short. Appellant did not know either man and yet he attempted to intimidate them without any provocation. His actions in the two cases are sufficiently similar to support an inference that he harbored the same motive and intent.

Finally, appellant was not prejudiced by consolidation. Neither case was more inflammatory than the other. Appellant's behavior was similar in both incidents. He clearly intended to harm both Rouse and Cico. Rouse could have suffered serious or fatal injury from the scissor jack appellant threw at the truck's back window. Cico could have been fatally injured by the bludgeon when appellant attacked him in June of 2011. Since appellant had previously injured Cico, his subsequent threats to kill Cico and stalking of him reflect a willingness to injure or to kill him. Neither case is more shocking than the other or more likely to inflame the jury against appellant. Appellant's conduct towards Rouse and Cico is equally reprehensible. The evidence was equally strong in both cases.[9] There is no reason to believe the jury was not able to follow its instruction to consider each count separately (CALCRIM No. 3515). The two cases arose out of incidents that occurred a few months apart from each other and each case involved a different victim.

---

[9] We note that appellant has advanced contradictory positions concerning the relative strength of the evidence. Defense counsel argued before the trial court that the evidence was weak in case No. CRM017867. Appellant now contends that the evidence was weak in case No. CRM019510. Neither position is convincing.

For all of these reasons, we uphold consolidation of the two cases as a reasonable exercise of judicial discretion.

Appellant's related contention that consolidation violated his federal constitutional rights to due process, a fair trial and a jury trial is equally unpersuasive. Here, as in *People v. Manriquez* (2005) 37 Cal.4th 547: """"In addressing each claim discussed in this opinion, we have considered defendant's contention that the alleged error violates the federal and California Constitutions, and our rejection of each claim of reversible error includes a determination that the alleged error does not warrant reversal under the state or federal Constitution."""" (*Id.* at p. 574, fn. 14 [consolidation upheld].) We have already explained that consolidation was statutorily proper and appellant did not suffer any resulting prejudice. Joint trial of the two cases was not fundamentally unfair and did not prevent the jury from making a reliable determination of appellant's guilt or innocence. Thus, consolidation did not infringe any of appellant's constitutional rights. (*Ibid.*)

## II. The Guilty Verdicts On The Criminal Threats and Stalking Charges Are Supported By Substantial Evidence.

Appellant argues that the criminal threat and stalking convictions must be reversed because the prosecution did not prove that Short communicated to Cico the threats appellant made on September 3rd or 4th. As will be explained, this element of the criminal threat and stalking crimes was proven beyond a reasonable doubt.

### A. The applicable standard of review is well established.

The applicable standard of review applicable to challenges to the sufficiency of the evidence supporting a guilty verdict is axiomatic.

> "When a defendant challenges the sufficiency of the evidence, '"[t]he court must review the whole record in the light most favorable to the judgment below to determine whether it discloses substantial evidence—that is, evidence which is reasonable, credible, and of solid value—such that a reasonable trier of fact could find the defendant guilty beyond a reasonable doubt." [Citation.]' [Citations.] 'Substantial evidence includes

circumstantial evidence and any reasonable inferences drawn from that evidence. [Citation.]' [Citation.] We ""'presume in support of the judgment the existence of every fact the trier could reasonably deduce from the evidence.'" [Citation.]' [Citation.]" (*People v. Clark* (2011) 52 Cal.4th 856, 942-943.)

"'Conflicts and even testimony [that] is subject to justifiable suspicion do not justify the reversal of a judgment, for it is the exclusive province of the trial judge or jury to determine the credibility of a witness and the truth or falsity of the facts upon which a determination depends. [Citation.] We resolve neither credibility issues nor evidentiary conflicts; we look for substantial evidence. [Citation.]' [Citation.] A reversal for insufficient evidence 'is unwarranted unless it appears "that upon no hypothesis whatever is there sufficient substantial evidence to support"' the jury's verdict. [Citation.]" (*People v. Zamudio* (2008) 43 Cal.4th 327, 357.)

"Even when there is a significant amount of countervailing evidence, the testimony of a single witness that satisfies the standard is sufficient to uphold the [disputed] finding." (*People v. Barnwell* (2007) 41 Cal.4th 1038, 1052.) "Reversal is not warranted unless it appears '"that upon no hypothesis whatever is there sufficient substantial evidence to support [the conviction]." [Citation.]' [Citation.]" (*People v. Duran* (2002) 97 Cal.App.4th 1448, 1457.)

**B.     The statutory elements required to prove the crimes of making criminal threats and stalking are undisputed.**

To prove the crime of making criminal threats in violation of section 422, the prosecution must establish all of the following elements: (1) the defendant willfully threatened to commit a crime which would result in death or great bodily injury to another person; (2) the defendant made the threat with the specific intent that the statement was to be taken as a threat: (3) the threat conveyed to the person threatened a gravity of purpose and an immediate prospect of execution of the threat; (4) the threat actually caused the person threatened to be in sustained fear for his own safety or his immediate family's safety; and (5) the threatened person's fear was reasonable under the circumstances. (*In re Ryan D.* (2002) 100 Cal.App.4th 854, 859-860.)

12.

To provide the crime of stalking in violation of section 646.9, subdivision (a), the prosecution must establish all of the following elements:  (1) the accused repeatedly followed or harassed another person, (2) made a credible threat, and (3) with the intent to place that person in reasonable fear of death or great bodily injury.  (*People v. Ewing* (1999) 76 Cal.App.4th 199, 210.)

**C.     There is substantial evidence proving that Short communicated to Cico appellant's threat to kill him.**

Section 422 is violated when a threat is communicated by the accused to a third party who conveys the threat to the victim.  (*In re David L.* (1991) 234 Cal.App.3d 1655, 1657.)  "Where the threat is conveyed through a third party intermediary, the specific threat element of the statute is implicated.  [If the accused] intended the threat to be taken seriously by the victim, he must necessarily have intended it to be conveyed."  (*Id.* at p. 1659.)  Section 422 does not require the third party to repeat the exact phrasing of the threat to the intended victim.

The record before us contains substantial evidence proving that on September 3, 2011, appellant sent Short text messages threatening to kill Cico and Cico was aware of appellant's threat.  This threat, along with prior threats, caused Cico to fear bodily harm or death at appellant's hands.

Cico testified that Short told him numerous times that appellant threatened him. He and Short had conversations about appellant's threatening messages "all the time, since I got with her."  Cico specifically remembered Short telling him that appellant sent a text message to her stating that he would "be dead."  Cico was scared of appellant and believed that appellant was capable of carrying out his threats.  The prosecutor asked Cico if, during September 3rd or 4th, he discussed "with Monique Short any

communication she had had from defendant?" Cico replied, "Yeah."[10] The prosecutor asked Cico, "[W]as your fear based on just general circumstances or was it based specifically on something that Monique told you?" Cico replied, "It was based on what he did and what she was telling me. I mean, I believe what she was telling me, you know."

Deputy Leuchner testified that on September 4, 2011, Short and Cico told him that appellant had attacked Cico and broke his arm. Short said that on the evening of September 3rd, she discovered that appellant sent threatening text messages to the cell phone she uses. The deputy reviewed these messages. One of them "stated 'I hate you.' Another one is I'm going to jail now -- 'I'm going to jail' and 'He's dead now.'" Cico was standing beside Short when she reported appellant's conduct to Deputy Leuchner.

We find that the jury could reasonably conclude from the entirety of this testimony and reasonable inferences that may be drawn from it, that Short told Cico about appellant's threat on September 3, 2011, to kill him. Thus, the contested element of the threat and stalking charges was adequately proven and appellant's evidentiary challenge fails.

From the entirety of this testimony and reasonable inferences that may be drawn from it, the jury could conclude beyond a reasonable doubt that on or about September 3rd or 4th of 2011, Short told Cico that appellant threatened to kill him and, in consequence, Cico was afraid of great bodily harm or death.[11] Therefore, the contested

---

**10** The court struck the rest of Cico's response to this question.

**11** Relying on *People v. Felix* (2001) 92 Cal.App.4th 905, appellant contends that certain testimony given by Cico could not be used to prove the disputed element. We did not rely on that testimony. As demonstrated above, there is substantial evidence apart from that particular testimony proving that Short communicated to Cico appellant's threats on September 3rd and 4th to kill him.

14.

element of the threat and stalking charges was adequately proven. Appellant's evidentiary challenge fails.

## DISPOSITION

The judgment is affirmed.

_____
LEVY, J.

WE CONCUR:


_____
HILL, P.J.


_____
DETJEN, J.