Filed 5/12/15  P. v. Flores CA4/2

## NOT TO BE PUBLISHED IN OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## FOURTH APPELLATE DISTRICT

## DIVISION TWO

| | |
|---|---|
| THE PEOPLE, | |
| Plaintiff and Respondent, | E060712 |
| v. | (Super.Ct.No. SWF1207306) |
| JUAN ELIAS FLORES, JR., | OPINION |
| Defendant and Appellant. | |

APPEAL from the Superior Court of Riverside County.  Lawrence W. Fry, Judge. (Retired judge of the Riverside Super. Ct. assigned by the Chief Justice pursuant to art. VI, § 6 of the Cal. Const.)  Affirmed.

Michael B. McPartland, under appointment by the Court of Appeal, for Defendant and Appellant.

Kamala D. Harris, Attorney General, Gerald A. Engler, Chief Assistant Attorney General, Julie L. Garland, Assistant Attorney General, Arlene A. Sevidal and Alastair J. Agcaoili, Deputy Attorneys General, for Plaintiff and Respondent.

1

I

INTRODUCTION

Defendant and appellant Juan Elias Flores, Jr., repeatedly contacted his former wife in violation of a restraining order. One night he confronted her in a parking lot, held a tire reamer tool to her neck and forced her to drive.

A jury convicted defendant of one count of kidnapping and one count of stalking. (Pen. Code, §§ 207, subd. (a), 646.9, subd. (c)(1).)[1] The jury also found that defendant had personally used a deadly weapon during the commission of the kidnapping. (§§ 1192.7, subd. (c)(23), 12022, subd. (b)(1).) Defendant admitted his prior serious felony conviction (§§ 667, subds. (a), (c) & (e)(1)), 1170.12, subd. (c)(1)) and having served five prior separate prison terms within the meaning of section 667.5, subdivision (b). The court sentenced defendant to a total prison term of 20 years.

On appeal, defendant argues insufficient evidence supported the stalking conviction. He also contends the court prejudicially erred when it instructed the jury about defendant's previous acts of domestic violence. We reject these contentions and affirm the judgment.

II

STATEMENT OF FACTS

A. *Present Offenses*

Defendant and his wife, Jane Doe 1, were married in 2002 and had two children

---

[1] Unless otherwise noted, all statutory references are to the Penal Code.

together. They separated in 2003 and divorced in 2008 or 2009 but then reconciled. Over several years, they had an intermittent romantic relationship, marred by defendant's abusive behavior. In November 2012, when they were living together again, they argued about finances and defendant broke Jane Doe 1's laptop computer. Jane Doe 1 broke off their relationship and moved in with defendant's aunt. Defendant's 17-year-old niece, Jane Doe 2, was also living there.

Jane Doe 1 told defendant she did not want have any contact with him. A restraining order also barred him from doing so. Nevertheless, over the next two weeks, defendant made many phone calls, sent multiple text messages, and tried to contact Jane Doe 1 personally at the house. Most of the time, Jane Doe 1 refused to talk to defendant.

On November 20, 2012, at about 5:30 p.m., Jane Doe 1, accompanied by Jane Doe 2, visited a Hemet business. As Jane Doe 1 returned to the car, defendant approached her, put his arm around her, and said: "So this is the way you're gonna make me talk to you?" Defendant held an object resembling a silver screwdriver against her neck and demanded she get in the car or he would "poke" her. Jane Doe 1 was afraid defendant might hurt her because he was angry and yelling when he grabbed her. She did not want to get into the car but defendant forced her to sit in the driver's seat and he sat behind her.

When Jane Doe 2 saw what happened, she asked an employee for the Hemet business to call the police. Jane Doe 2 then returned to the car, and got into the front passenger seat. Defendant told Jane Doe 1 to drive to his aunt's residence and drop off Jane Doe 2. While Jane Doe 1 was driving, she spotted a volunteer police officer and stopped the car. Jane Doe 2 jumped out of the car and reported the incident to the

volunteer police officer, who called Hemet police dispatch. Jane Doe 1 and defendant also left the car and spoke to the police volunteer.

Hemet police officers arrived and detained defendant. They searched Jane Doe 1's car and found a tire reamer probe—a tool similar to a screwdriver—wrapped in a blue cloth on the floorboard of the back seat, near where defendant had been sitting.

While in jail, defendant called Jane Doe 1 multiple times. The recorded phone calls were played for the jury. Defendant's persistent theme in the phone calls was that Jane Doe 1 should lie about the incident so the case would be dismissed.

B. *Evidence of Prior Acts of Domestic Violence*

Over defense objections, the court allowed the prosecutor to introduce evidence of prior acts of domestic violence committed by defendant against Jane Doe 1. (Evid. Code, § 1108.) Specifically, Edmme Rodriguez testified that in 2003, defendant and Jane Doe 1 had rented a room from her and defendant had thrown a drink at Jane Doe 1. Rodriguez also stated that defendant would beat up Jane Doe 1 about twice a week. She heard Jane Doe 1 screaming and observed bruises, blood, and a black eye.

Jane Doe 1 testified that defendant kicked and kneed her in the back in August 2011 and choked her in September 2011. Defendant also had violated restraining orders in 2011 and 2012 by contacting her and leaving threatening messages. A domestic violence expert testified that abusers exert control over their victims in ways similar to defendant's conduct.

4

*C. Defendant's Evidence and Argument*

In his own testimony, defendant admitted abusing Jane Doe 1 in the past and violating restraining orders by contacting her and leaving threatening messages.

Defendant claimed Jane Doe 1 asked to meet him at the Hemet business. He blamed Jane Doe 2 for "making a scene," calling the police, and threatening to jump out of the car. In addition, he claimed it was Jane Doe 2 who picked up the tire reamer, which he took away from her, wrapped in a blue cloth, and placed on the floorboard. Defendant testified he did not force Jane Doe 1 to drive anywhere and he did not threaten her. He admitted he was angry that night.

Defense counsel argued to the jury that defendant did not use a weapon or threats to force Jane Doe 1 but that she accompanied defendant voluntarily. Even if defendant had forced Jane Doe 1 to get in her car and drive, he did not move her a substantial distance and he did not force her to drive the car, meaning the evidence could not support the kidnapping charge. Defense counsel also argued there was insufficient evidence of stalking because defendant had not willfully and maliciously harassed Jane Doe 1.

III

STALKING CONVICTION

Defendant urges his stalking conviction must be reversed because insufficient evidence supported a finding that he willfully and maliciously harassed Jane Doe 1. Instead, he contends the evidence showed that Jane Doe 1 was not "seriously" annoyed by defendant's attempts to contact her and she did not take most of his calls.

5

Furthermore, defendant was trying to contact Jane Doe 1 for a legitimate purpose to discuss their relationship and their children.

In reviewing a claim of insufficient evidence, the appellate court considers the entire record in the light most favorable to the judgment below in order to determine whether it discloses substantial evidence to support the verdict. (*People v. Avila* (2009) 46 Cal.4th 680, 701, citing *Jackson v. Virginia* (1979) 443 U.S. 307; *People v. Chatman* (2006) 38 Cal.4th 344, 389; *People v. Johnson* (1980) 26 Cal.3d 557, 562.) Substantial evidence is evidence that is reasonable, credible, and of solid value, such that a reasonable trier of fact could find the defendant guilty beyond a reasonable doubt. (*Chatman*, at p. 389.)

To prove stalking, section 646.9, requires that defendant "willfully and maliciously harasses another person and . . . makes a credible threat with the intent to place that person in reasonable fear for his or her safety . . . ." To harass means to engage "in a knowing and willful course of conduct directed at a specific person that seriously alarms, annoys, torments, or terrorizes the person, and that serves no legitimate purpose"; and "'course of conduct' means two or more acts occurring over a period of time, however short, evidencing a continuity of purpose." (§ 646.9.) The statute is remedial in nature and is liberally construed to effect its purpose and "to suppress the mischief at which it is directed." (*People v. Clayburg* (2012) 211 Cal.App.4th 86, 91.)

At trial, substantial evidence established that defendant had harassed Jane Doe 1 for weeks, while she was living with his aunt, by calling and texting threats and trying to contact her personally in spite of a restraining order and her express desire not to see him.

6

Finally, defendant confronted her in a parking lot, threatened her with a tire tool, and forced her to drive. Jane Doe 1 was not merely bothered by defendant's conduct. She was "seriously" annoyed and afraid he would hurt her, a valid concern in view of defendant's years of abuse against Jane Doe 1.

A jury could reasonably conclude defendant had stalked Jane Doe 1. Similar patterns of conduct have been characterized as harassment in other appellate cases involving frequent unwanted contacts and threats. (*People v. Uecker* (2009) 172 Cal.App.4th 583, 595-596; *People v. Zavala* (2005) 130 Cal.App.4th 758, 767; *People v. Heilman* (1994) 25 Cal.App.4th 391, 399.) Defendant's alternative explanation that he wanted to talk to Jane Doe 1 about their children was rejected by the jury and cannot be accepted by a reviewing court to overturn the jury's verdict. (*People v. Zamudio* (2008) 43 Cal.4th 327, 357; *People v. Tran* (1996) 47 Cal.App.4th 253, 260.) We hold substantial evidence supported the stalking conviction.

IV

PRIOR ACTS OF DOMESTIC VIOLENCE

The prosecution introduced evidence of prior acts of domestic violence that defendant had committed against Jane Doe 1. (Evid. Code, § 1108.) Defendant had thrown a drink at Jane Doe 1 and beat her up. Defendant kicked her, kneed her in the back, and choked her.

The court instructed the jury about the uncharged acts of domestic violence, based on CALCRIM No. 852:

"The People presented evidence that the defendant committed domestic violence that was not charged in this case, specifically: described events from 2002 to 2003 while living with Edmme Rodriguez, described events in 2011 of kneeing, kicking, grabbing an arm, and strangling, described violations of the restraining order in 2011 and 2012.

"[¶] . . . [¶]

"If you decide that the defendant committed the uncharged domestic violence, you may, but are not required to, conclude from that evidence that the defendant was disposed or inclined to commit domestic violence and, based on that decision, also conclude that the defendant was likely to commit and did commit kidnapping and stalking, as charged here. If you conclude that the defendant committed the uncharged domestic violence, that conclusion is only one factor to consider along with all the other evidence. It is not sufficient by itself to prove that the defendant is guilty of kidnapping and stalking. The People must still prove the charge beyond a reasonable doubt. [¶] Do not consider this evidence for any other purpose."

On appeal, defendant contends that the trial court prejudicially erred when it instructed the jury that if they found defendant was "disposed or inclined to commit domestic violence," they could conclude that he was likely to commit and did commit the crime of kidnapping. According to defendant, the evidence of uncharged domestic violence was admissible to show stalking because a jury may infer from defendant's commission of standard types of domestic violence—such as hitting, pushing, and choking—that defendant committed a similar offense like stalking. Defendant argues

8

kidnapping does not qualify as a similar offense. (*People v. Poplar* (1999) 70 Cal.App.4th 1129, 1139.)

We independently review a claim of instructional error. (*People v. Cole* (2004) 33 Cal.4th 1158, 1210.) The trial court has a duty to instruct correctly on legal principles. (*People v. Mendoza* (1998) 18 Cal.4th 1114, 1134.) Here the court gave the correct instruction. A jury may consider propensity evidence introduced under Evidence Code sections 1108 and 1109 to infer that defendant had a disposition to commit similar offenses. (*People v. Johnson* (2008) 164 Cal.App.4th 731, 738-740, citing *People v. Reliford* (2003) 29 Cal.4th 1007, 1011-1016.)

Contrary to defendant's assertion, it is a reasonable inference based on the circumstances of this case "that a person who commits an act of domestic violence by hitting or choking someone would be likely to kidnap the victim off a public street with a deadly weapon." Defendant was charged with kidnapping while forcibly using a deadly weapon against Jane Doe. The prosecution presented evidence that defendant had hit, kneed, kicked, and choked the victim in the past.

Domestic violence involves causing or threatening bodily injury (§ 13700), which is exactly what defendant inflicted on Jane Doe 1 during the course of the kidnapping. As respondent argues, the kidnapping charge incorporates domestic violence in that defendant used force and threats to compel Jane Doe 1, his former wife, to get in her car and drive some distance. The evidence showed defendant was inclined to commit similar acts of domestic violence, including kidnapping.

The *Poplar* case, on which defendant relies, equated forcible rape of a cohabitant with domestic violence. Here also, the kidnapping included domestic violence. Therefore, the court gave the jury a correct instruction to consider defendant's past domestic violence in deciding the kidnapping charge.

Furthermore, although not necessary to our disposition, we conclude any error was harmless beyond a reasonable doubt. (*People v. Mendoza* (2000) 24 Cal.4th 130, 180.) The evidence of aggravated kidnapping was overwhelming and essentially admitted by defendant.

V

DISPOSITION

We affirm the judgment.

NOT TO BE PUBLISHED IN OFFICIAL REPORTS

CODRINGTON
J.

We concur:

RAMIREZ
P. J.

HOLLENHORST
J.

10